**Roger TAYLOR, Plaintiff–Appellant,**

**v.**

**KENNEDY ENGINE, INC., et al., Defendants,**

**Newman Crane Service, Defendant–Appellee.**

**No. 88–3483**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 2, 1988.

William P. Rutledge, Lafayette, La., for plaintiff-appellant.

Alan R. Sacks, New Orleans, La., for defendant-appellee.

Before RUBIN, GARWOOD, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Roger Taylor (Taylor) appeals the dismissal of his personal injury complaint against defendant-appellee Newman Crane Company (Newman). The district court granted a motion to dismiss the complaint as to Newman for failure to state a claim under Fed.R.Civ.P. 12(b)(6).[1] Although the court considered matters outside the pleadings, apparently without affording the ten-day notice provided for in Rule 56(c), *see Powell v. United States*, 849 F.2d 1576, 1578–79 (5th Cir.1988), no complaint is made in that regard on appeal. The district court's ruling was based on its determination that Taylor's claim against Newman lacked a sufficient maritime nexus to constitute a maritime tort, and that considered as a state law claim it was barred by prescription. On appeal, Taylor challenges only the former determination. We agree with Taylor and reverse.

Viewing the facts consistently with the recitals in the district court's memorandum opinion and as the parties have assumed them to be for purposes of testing the correctness of the district court's ruling, the situation appears to have been as follows.

Newman provides land-based cranes and their operators to various companies. Sometime before February 2, 1984—apparently on January 30, 1984—a Newman crane was lifting an engine from the vessel M/V FUEL PUSHER when the engine dropped onto one of the vessel's ladders, damaging a rung on the ladder.[2] The vessel was a commercial tug and was then afloat in navigable waters, docked at the port of Venice, Louisiana. Taylor was then a member of the crew of the vessel. Newman was hired to perform this work by the vessel owner, Taylor's employer. The Newman crane sat on the dock or shore,

and its boom was extended over the water to pick up the engine; with the boom thus positioned and carrying the engine out of the well of the vessel, the engine was dropped onto the vessel, damaging the ladder rung. Taylor asserts that the crane's dropping of the engine was due to negligent operation of the crane by the Newman crane operator or the crane's defective gear or both. On February 2, 1984, at least a day after the dropping of the engine, Taylor was on the M/V FUEL PUSHER, which was afloat in navigable waters apparently at the same dock, and was performing his duties as a member of its crew when he stepped on the damaged ladder rung and, due to its defective condition, slipped and fell on the vessel's deck, thus causing the injuries to his person for which this suit seeks recovery.

The dividing line between maritime and nonmaritime jurisdiction is often unclear.[3] Some of the most troubling cases entail situations, such as this one, involving activities both on land and on navigable waters. There are two requisites, each of which must be met in order for a tort to be maritime. First, the tort must have a maritime situs. Second, the alleged wrong must bear a significant relationship to traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972).

■ Here, the first test, that of situs, is clearly met under our jurisprudence, for Taylor's injury—and, indeed, the injury to the vessel's ladder rung—occurred entirely (and without any land-located component, such as initial contact on land) on navigable waters. The fact that Newman's negligence or the defect in its equipment may have occurred on land is thus not decisive.

1. Other defendants were also sued, but the district court certified the judgment in Newman's favor under Fed.R.Civ.P. 54(b).

2. It is unclear whether Newman was lifting the engine out of or setting it back into the vessel. It is also unclear whether what was being lifted was the vessel's engine or its generator. Neither question is material to our resolution of this appeal.

3. Although the question is often a jurisdictional one, it can also be, as it is here, a choice of law question. If the tort is maritime for jurisdictional purposes, maritime substantive law applies. *See, e.g., In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 277 n. 27 (5th Cir.1974), *cert. dism'd*, 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975).

An analogous case is *Watz v. Zapata Off–Shore Co.*, 431 F.2d 100, 109–11 (5th Cir. 1970), where we sustained admiralty jurisdiction over a somewhat similar injury to a pipe fitter working on a vessel docked in navigable waters undergoing extensive home port-type structual repairs (*id.* at 107–08). We did so because "[a]lthough the negligence and breach of warranty ... occurred on land ... Watz [the plaintiff] sustained his injuries on board the NOLA III while it was afloat in navigable waters...." *Id.* at 110.[4] We recently remarked in *Parker v. Gulf City Fisheries*, 803 F.2d 828 (5th Cir.1986), "[w]e have long held that 'so long as the place of the injury ... occurs upon navigable waters, the fact that the negligent act may have occurred on shore is of no relevance'" to the situs requirement. *Id.* at 829–30 (footnote omitted) (quoting from *Sperry Rand Corp. v. Radio Corp. of America*, 618 F.2d 319, 321 (5th Cir.1980)). *See also Smith v. Pan Air Corp.*, 684 F.2d 1102, 1111 (5th Cir.1982) ("admiralty jurisdiction has repeatedly been extended to cases in which death or injury occurred on navigable waters even though the wrongful act occurred on land" (footnote omitted)); *Sperry Rand; Jig The Third Corp. v. Puritan Marine Insurance Underwriters Corp.*, 519 F.2d 171, 174 (5th Cir.1975), *cert. denied*, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976); *In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 276, 286 (5th Cir.1974), *cert. dism'd*, 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975); *Kelly v. Smith*, 485 F.2d 520 (5th Cir.1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).

■ The district court, however, determined that the claimed wrong did not meet the significant maritime relationship, or maritime nexus, requirement. In *Kelly*, this Court outlined four factors to be considered in evaluating whether the maritime nexus requirement is satisfied, namely: (1) the functions and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and type of inju-ry; and (4) traditional concepts of the role of admiralty law. *Id.*, 485 F.2d at 525. We thus turn to these *Kelly* factors, bearing in mind, however, "the imprecise fluidity" of that approach and the purpose of the maritime nexus test to separate the true admiralty cases from those involving merely "[t]he fortuitous circumstance that an injured party ... somehow ended up in navigable waters." *Watson v. Massman Construction Co.*, 850 F.2d 219, 221, 222 (5th Cir.1988).

As to the functions and roles of the parties, here Taylor was a seaman performing his duties as such on a vessel in navigable waters, a distinctly maritime function and role. Newman and its crane operator have much less of a maritime connection, being land based and, we presume, doing as much or more wholly land-related work as that having anything to do with the sea. However, a maritime nexus is not entirely lacking here as to Newman and its operator, for they were providing services to a traditional vessel in navigable waters and it was a necessary part of those services that the crane boom extend over navigable waters and handle a portion of the floating vessel. The first factor, then, is more maritime than otherwise. Respecting the types of vehicles and instrumentalities involved, essentially the same analysis applies. A vessel floating in navigable waters and the rungs of its ladder are maritime in nature; Newman's crane is predominantly nonmaritime, but in this instance it is not wholly without any maritime nexus. Causation and type of injury are also mixed. From Taylor's perspective, causation and injury are both distinctly maritime: a seaman injured in the course of his duties on a vessel in navigable waters by falling off a defective vessel ladder rung onto the vessel deck. From Newman's perspective, there is less maritime flavor, but it is not wholly absent. Viewed in this light, causation is nonmaritime, a defect in Newman's crane or negligence of its operator, both land

---

**4.** While *Watz* was decided before *Executive Jet*, *Watz* nevertheless remains authoritative as to the situs requirement for maritime torts, since *Excutive Jet* did not alter the situs requirement but merely added the further nexus requirement. *See, e.g., Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1186–87 (5th Cir.1984).

based. But even from Newman's perspective, the injury—damage to a vessel afloat in navigable waters—is maritime. Thus, on balance, the third *Kelly* factor is more maritime than not.

Similar reasoning leads us to conclude that traditional concepts of the role of admiralty law support the conclusion that Taylor's claim is maritime. Injuries to vessels in navigable waters have certainly been a traditional concern of admiralty law. True, the vessel here was not underway and, apparently, was unable to proceed under its own power, at least when the engine was dropped. However, vessel repair work, in which Newman was engaged, has, at least for contract law purposes, been regarded as maritime in nature. *See North Pacific Steamship Co. v. Hall Brothers*, 249 U.S. 119, 39 S.Ct. 221, 63 L.Ed. 510 (1919). In other special contexts, this factor has not alone been deemed enough to afford a sufficiently maritime nexus for tort purposes. *See Woessner v. Johns–Manville Sales Corp.*, 757 F.2d 634 (5th Cir.1985). Nor has mere vessel involvement in the accident. *See Watson; Molett v. Penrod Drilling Co.*, 826 F.2d 1419 (5th Cir.1987). But in all these cases, the injured parties were nonseamen. Thus, in *Watson*, we emphasized that the plaintiff's decedent "was neither a near pilot nor a seaman" but rather "was a land-based worker who was not doing seaman's work." *Id.*, 850 F.2d at 222, 223. *Watson* further characterized the plaintiffs in *Molett* as "rig builders, not seamen, and not doing things seamen traditionally do." *Watson*, 850 F.2d at 223. In *Woessner*, the plaintiffs, who claimed to have incurred asbestosis, were independently employed land-based insulators who worked (and were exposed to asbestos) indifferently both ashore and on diverse unrelated vessels and were not engaged in work traditionally done by a vessel crew. *Id.*, 757 F.2d at 643–45.

We are aware of no case in which we have held admiralty jurisdiction lacking with respect to a seaman's claim for injuries sustained in the course of his service to a vessel in navigable waters. In *Dearborn*, we applied maritime law to a suit against a fixed platform operator by crew members of a vessel injured by an explosion on the platform which the vessel was tied to and servicing, though we held nonmaritime a suit against the platform operator by a platform worker who was injured while on the vessel. *Id.*, 499 F.2d at 276, 286; *see also Smith*, 684 F.2d at 1110 & n. 30. In *Smith*, a helicopter, engaged in transporting workers from the mainland to fixed platforms offshore, crashed into the sea after taking off from such a platform. The crash arose because the helicopter's rotor blade struck a crane ball which hung from the arm of a crane, the crane being situated on the platform and its arm and pendant ball extending over the water. Relying in part on *Dearborn*, we held that the suits against the platform operator for the death of the helicopter pilot and for the loss of the helicopter were maritime. *Smith*, 684 F.2d at 1111–12. We noted that the helicopter pilot was engaged in a "maritime-type function" and was hence more like the crew members in *Dearborn* than the platform worker there. Smith, *at 1111*. In Parker, *we found admiralty jurisdiction, stressing that the injured plaintiff was serving as captain of a vessel at sea.* Id., *803 F.2d at 830.*

Admiralty has traditionally been concerned with the protection of seamen injured in the course of service to their vessel, and *Executive Jet* notes that this concern extended to providing a maintenance and cure remedy against the vessel even where the injury occurred on land. *Id.*, 93 S.Ct. at 500. We do not determine whether under this principle admiralty would extend in such cases to suits against third parties, such as Newman, for seaman injuries on land. Rather, the principle merely illustrates the general importance, in traditional admiralty concepts, of the fact that the injury sued for was incurred by a seaman in the course of his service to his vessel. Here, the injury *did* occur on Taylor's vessel while it was afloat in navigable waters. As we have noted, "injuries to workers aboard ship fall within the admiralty jurisdiction even though similar injuries to their counterparts on shore do not." *Parker,*

803 F.2d at 830 (footnote omitted). More-over, because Taylor was injured in the course of his duties as a seaman on the vessel, it cannot be said that the maritime situs of the injury was in any sense fortuitous. The vessel was in navigable waters because it was a vessel, and Taylor was working aboard it because that was his job as a member of its crew.

The district court primarily relied on *West v. Chevron*, 615 F.Supp. 377 (E.D.La. 1985), where the suit was for injuries to platform workers who, while being lifted by a fixed platform-based crane from the platform to a crew boat, were dropped onto the boat. The workers' suit against the platform operator was held not to be maritime. We find *West* properly distinguishable. The *West* court stressed "that plaintiffs were the quintessential platform workers," *id.* at 379, and were injured in the course of their employment as such; here, by contrast, Taylor was a seaman, a quintessential maritime worker, injured in the course of service to his vessel. *West* also relied on the perceived fortuity of the maritime situs there, as the workers might just as easily have been dropped on the fixed platform instead of on the vessel. *Id.* at 380–81. Here, as we have noted, the maritime situs is not fortuitous, and indeed it was the injury to the vessel that ultimately caused the injury to Taylor.[5]

 Considering the *Kelly* factors as a whole, we hold that, on the assumed facts, the claimed wrong bore a sufficiently significant relation to traditional maritime activity to meet that prong of *Executive Jet*. As previously explained, the other prong of *Executive Jet*, the situs requirement, was also satisfied. Accordingly, Taylor's tort action against Newman was governed by maritime law. We recognize that this variety of case may not lie near the core of admiralty jurisprudence and perhaps is closer to its outer boundaries. Neverthe-

less, on these facts, it is clearly a maritime claim. Because the district court concluded otherwise, its dismissal of Taylor's suit against Newman is reversed and the cause is remanded for further proceedings consistent herewith.

REVERSED AND REMANDED.

---

5. The district court also relied on *Sohyde Drilling & Marine Co. v. Coastal States Gas Producing Co.*, 644 F.2d 1132 (5th Cir.), *cert. denied*, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). But the factual context of *Sohyde* was quite different. It involved a submersible drilling rig resting on the bottom of an eight-foot-deep, dead-end dredged canal slip. We deemed any "maritime character" the rig may have had not to be "substantial." *Id.* at 1137. Plainly that cannot be said of the afloat tug here. Nor did *Sohyde* involve any claims for personal injury to seamen.