**TEXACO REFINING AND MARKETING, INC. and Texaco Marine Services, Inc., Petitioners,**

v.

**ESTATE OF DAU VAN TRAN, et al., Respondents.**

No. D–0473.

Supreme Court of Texas.

April 24, 1991.

Rehearing Overruled May 30, 1991.

Michael C. Farrow, Houston, David E. Keltner, Fort Worth, John F. Waldo, Houston, for petitioners.

Jon B. Burmeister, Everett H. Sanderson, George Sladczyk, Jr., Steven C. Barkley, Beaumont, for respondents.

## OPINION

GAMMAGE, Justice.

Dau Van Tran was crushed to death when a large wave, purportedly caused by the tanker TEXACO CALIFORNIA's excessive speed, washed ashore just as he exited the water between a dock barge and a shrimp boat. Suit was filed against the tanker's owners and operators, Texaco Refining and Marketing, Inc. and Texaco Marine Services, Inc. ("Texaco"), under the Texas Wrongful Death and Survivorship Statutes [1]. The suit also alleged Texaco violated article 29 of the Inland Rules, by failing to practice good seamanship. Texaco named the owner/operator of the shrimp boat and dock involved, Farmer Boy's Catfish Kitchens International, Inc., as a third party defendant. Plaintiffs alleged negligence and violations of general maritime law against the third party.

The trial court rendered judgment against Texaco, exonerating the other defendant. The Beaumont Court of Appeals affirmed. 777 S.W.2d 783, writ denied. Subsequently, the U.S. Supreme Court granted writ of certiorari, vacated the judgment and remanded the cause to the court of appeals for further reconsideration in light of *Sisson v. Ruby*, 497 U.S. ——, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). On remand, the court of appeals reaffirmed its original decision. 795 S.W.2d 870. Mindful of the U.S. Supreme Court's remand order, and after a review of applicable law, we conclude the court of appeals erred in its conclusions. Accordingly, we will reverse.

■■■ Dau Van Tran was neither a seaman nor a longshoreman. He was a "good samaritan" who stopped to help the elderly captain of a shrimp boat free his propeller. He was against the dock barge between two tires when the wave washed ashore, throwing the shrimp boat against the dock crushing him. The facts and circumstances of this case remove it from statutes protecting classes of individuals under traditional maritime law: the Jones Act, 46

U.S.C.App. § 688, which protects seamen; the Death on the High Seas Act, DOHSA, 46 U.S.C.App. § 761 et seq., applicable to deaths of persons occurring on the high seas beyond a maritime league from shore; and the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq., giving longshoremen worker's compensation benefits. General maritime jurisdiction would be appropriate, however, under the Admiralty Extension Act of 1948, 46 U.S.C.App. § 740: "[t]he admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." The Admiralty Extension Act's purpose "was to prevent individuals from falling through the cracks of state law and admiralty jurisdiction". *Kahn v. Gates Constr. Corp.*, 103 A.D.2d 438, 480 N.Y.S.2d 351, 355 (1984). Texaco argues the trial court incorrectly awarded damages to the plaintiffs for mental anguish, loss of society, and prejudgment interest, none of which are permitted under general maritime law. Damages for the mental anguish suffered by the beneficiaries "are not compensable under the maritime wrongful-death remedy," *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 585 n. 17, 94 S.Ct. 806, 815 n. 17, 39 L.Ed.2d 9 (1974). Loss of society is not recoverable under general maritime law, *Miles v. Apex Marine*, —— U.S. ——, ——, 111 S.Ct. 317, 326, 112 L.Ed.2d 275 (1990). Contrary to Texaco's assertions, however, an award of prejudgment interest in an admiralty case is within the sound discretion of the court. *Pickle v. International Oilfield Divers, Inc.*, 791 F.2d 1237, 1240 (5th Cir.1986), cert. denied, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987). "In fact, generally in maritime law, prejudgment interest should be awarded." *Curry v. Fluor Drilling*, 715 F.2d 893, 896 (5th Cir.1983).

■■■ The U.S. Supreme Court remanded this cause following its decision in *Sis-*

---

**1.** Texas Wrongful Death Statute, Tex.Civ.Prac. & Rem.Code Ann. §§ 71.001–.002 (Vernon 1986);

Texas Survival Statute, Tex.Civ.Prac. & Rem Code Ann. § 71.021 (Vernon 1986).

son v. Ruby, supra. Sisson sets out a two-part test to determine maritime jurisdiction's appropriateness: first, a court must determine the event's potentially disruptive impact on maritime commerce; second, the general conduct surrounding the incident must be substantially related to traditional maritime activity. Examining the first requirement of the Sisson test, we consider the potentially disruptive impact of the incident on maritime commerce—whether it poses a significant hazard to commercial vessels. Here a ship allegedly navigating at too great a speed caused a large wave which injured someone along the shoreline. This activity poses a threat to any person or thing in close proximity to the shoreline. This would not appear to constitute a potential disruption to maritime activity or commercial vessels. It could be argued, however, that such an event would potentially endanger passing vessels and docked commercial ships with their attendant dockside activities. Texaco also presented evidence at trial that the TEXACO CALIFORNIA's speed was necessary to protect the ship, apparently to compensate for a strong cross-current which could have grounded the ship. The second part of the Sisson test concerns whether the conduct involved was substantially related to traditional maritime activity. The general conduct giving rise to the incident was the passage of the vessel through the ship channel, and is clearly substantially related to traditional maritime activity. Moreover, during oral arguments both sides conceded a maritime tort had occurred.

■ Where applicable and properly invoked, general maritime law preempts state causes of action and remedies, consistent with the longstanding desire of Congress and the judiciary to achieve uniformity in the exercise of admiralty jurisdiction pursuant to the U.S. Constitution, art. 3, § 2, cl. 1. See Foremost Insurance Co. v. Richardson, 457 U.S. 668, 676–677, 102 S.Ct. 2654, 2659, 73 L.Ed.2d 300 (1982). The "savings to suitors" clause of 28 U.S.C. 1333(1) permits state courts to adjudicate maritime actions "constrained by the 'reverse–Erie' doctrine which requires that

substantive remedies afforded by States conform to governing federal maritime standards." Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 223, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986).

■ Where general maritime law is properly invoked by pleadings and litigated at trial, a trial court's failure to award damages consistent with maritime law is clearly reversible error. Plaintiff's live pleadings refer to the Inland Water Rules and failure to practice good seamanship. Texaco did not plead maritime law nor object to evidence of damages inconsistent with maritime law, but did raise it in its fourteenth proposed finding of fact and conclusion of law: "The case at bar is governed by the principles of general maritime law." Maritime remedy constraints were again raised in Texaco's motion for new trial. Moreover, one of the plaintiffs' proposed findings of fact states: "The TEXACO CALIFORNIA failed to observe the rules of the road and the rules of good seamanship on the day in question." In response to Texaco's motion for new trial, the plaintiffs filed amended findings of fact. Acknowledging Texaco's plea that the court not award mental anguish damages inconsistent with maritime law remedies, plaintiffs asked the court to "reconsider its award for loss of companionship, affection and society, both past and future, for both the mother and father."

We conclude this was sufficient notice to the trial court to invoke general maritime law and its limited remedies. Accordingly, we reverse the judgment of the court of appeals and remand this cause to the trial court for rendition of judgment consistent with this opinion.