**SEVEN SEAS FISH MARKET, INC., et al., Appellants,**

v.

**KOCH GATHERING SYSTEMS, INC. and Richard Tuttle, Appellees.**

No. 13–99–298–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 11, 2001.

Frank E. Weathered, Dunn & Weathered, Corpus Christi, for appellants.

Kent E. Westmoreland, Phelps Dunbar L.L.P., Houston, Russell Manning, Lynette Maniss Frederick, Gene R. Ward, Demars, Hornblower, Manning & Ward, Douglas A. Allison, Huerta, Hastings, Allison, L.L.P., Corpus Christi, Robert J. McCully, Wichita, KS, for appellees.

Before Justices HINOJOSA, CHAVEZ, [1]and RODRIGUEZ.

## OPINION

RODRIGUEZ, Justice.

Seven Seas Fish Market, Inc., and five other corporations, appellants, appeal from a summary judgment in favor of appellees, Koch Gathering Systems, Inc. and Richard Tuttle, individually, and as a representative of Koch. Appellants challenge the summary judgment by three issues. We reverse and remand.

Appellants are Texas corporations engaged in the wholesale purchasing and selling of seafood. On or about October 8, 1994, an oil pipeline owned by Koch ruptured, causing crude oil to leak into Gum Hollow Creek. The creek deposited oil into Nueces, Corpus Christi, and Oso Bays. Appellants filed suit against appellees, alleging that the oil spill caused a reduction in seafood catch by commercial fishermen, which, in turn, disrupted appellants' operations. Appellants sought economic damages for negligence and gross negligence based on, *inter alia*, appellees' alleged failure to properly design and maintain the pipeline and failure to respond adequately to the oil spill. Appellants also brought a claim of fraud based on an allegation that Tuttle, individually, and as a representative of Koch, made representations to the public minimizing the severity of the oil spill, resulting in an inadequate response and exacerbating the damages.

Appellees filed a motion for summary judgment, asserting federal maritime law preempted state law, and precluded appellants' claims for economic damages. According to the motion, the maritime common-law rule that there can be no recovery for economic loss absent physical injury to a proprietary interest precluded any recovery by appellants. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 308–09, 48 S.Ct. 134, 72 L.Ed. 290 (1927). The

1. Retired Justice Melchor Chavez assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

motion also asserted appellants did not rely on any misrepresentation, which negated appellants' claim of fraud.[2] The trial court granted the motion for summary judgment.

By their first and third issues, appellants contend the trial court erred in granting summary judgment because appellees did not establish, as a matter of law, that maritime law was applicable or that it preempted state law. Appellants further contend that even if maritime law preempted state law, their claims for economic damages were not barred.

We review an appeal from the granting of a summary judgment by determining whether the summary judgment proof conclusively establishes that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action or whether the defendant has established all elements of an affirmative defense. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Crain v. Smith*, 22 S.W.3d 58, 59 (Tex.App.—Corpus Christi 2000, no pet.). All evidence favorable to the non-movant will be taken as true and all reasonable inferences must be indulged in favor of the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Crain*, 22 S.W.3d at 59. A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish that defense. *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997).

Preemption is an affirmative defense. *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 436 (Tex.1999). As such, it must be established as a matter of law at the summary judgment stage. *Id.* (citing *Kiefer v. Continental Airlines, Inc.*, 882 S.W.2d 496, 497–98 (Tex.App.—Houston

**2.** Appellees contend the portion of the motion for summary judgment addressing appellants' fraud claim was a no-evidence motion under rule 166a(i) of the Texas Rules of Civil Procedure. The authority cited by appellees in their motion, however, refers only to a traditional motion for summary judgment in which the defendant must conclusively disprove an essential element of the plaintiff's cause of action. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773 (Tex.1995); *see also* Tex. R. Civ. P. 166a(b). Appellees' motion fails to state there is no evidence supporting the element of reliance. Instead, the motion provides:

> Although Plaintiffs allege that Tuttle's representations of the size of the oil spill resulted in an inadequate response to the spill, they only bought and sold fish products and were not in a position to provide any response to the spill. Because Plaintiffs were never in a position to act in reliance on Tuttle's representations regarding the size of the spill, they cannot satisfy one of the essential elements of a claim for fraud.

Appellants filed a reply to appellees' motion, which argued that appellees "filed their motion for summary judgment under the traditional (as opposed to 'no-evidence') summary judgment rules." Appellees' response to appellants' reply did not rebut the characterization of their motion as a traditional motion for summary judgment.

The comment to rule 166a(i) provides, in part, "[t]he motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." Tex. R. Civ. P. 166a(i) cmt. In *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 741 n. 1 (Tex.App.—Houston [14th Dist.] 1999, no pet.), our sister court held that where it was unclear whether a party moved for summary judgment on the traditional basis of conclusively negating an element of the plaintiff's cause of action as set forth in rule 166a(b), or on the basis that there was no evidence to support an element of the plaintiff's cause of action under rule 166a(i), there was insufficient notice that the motion was brought under rule 166a(i). Here, based on the law cited in the motion and construing the summary judgment motion in its entirety, it appears appellees moved for summary judgment as against appellants' fraud claim under rule 166a(b). That is, appellees sought to conclusively disprove the element of reliance. Therefore, our review of the motion for summary judgment is limited to whether appellees established maritime preemption as a matter of law and whether they disproved the reliance element of appellants' fraud claim as a matter of law.

[1st Dist.] 1994), *aff'd,* 920 S.W.2d 274 (Tex.1996)).

■ Appellants first contend appellees failed to establish the instant case is governed by general maritime law. Article III, Section 2 of The United States Constitution provides federal courts with jurisdiction over admiralty and maritime cases. U.S. CONST. art. III, § 2. Congress has further given federal district courts "original jurisdiction ... of ... any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). When a cause of action is cognizable in admiralty, regardless of whether the action is brought in state or federal court, the substantive law to be applied is general maritime law as developed by the federal courts. *Jansson v. Swedish Am. Line,* 185 F.2d 212, 216 (1st. Cir.1950); *see East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 863, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) ("[w]ith admiralty jurisdiction comes the application of substantive admiralty law"); *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 255, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1320 (11th Cir.1989); David P. Lewis, Note: *The Limits of Liability: Can Alaska Oil Spill Victims Recover Pure Economic Loss?,* 10 ALASKA L. REV. 87, 89–90 (1993). In other words, "[t]he 'savings to suitors' clause of 28 U.S.C. 1333(1) permits state courts to adjudicate maritime actions 'constrained by the "reverse-Erie" doctrine which requires that substantive remedies afforded by States conform to governing federal maritime standards.'" *Texaco Ref. and Mktg., Inc. v. Estate of Dau Van Tran,* 808 S.W.2d 61, 64 (Tex.1991) (quoting *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986)).

■ To invoke admiralty jurisdiction, a party must satisfy both the locality and maritime nexus tests. *Executive Jet Aviation,* 409 U.S. at 261, 93 S.Ct. 493. The former requires a determination of "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); *see East River S.S. Corp.,* 476 U.S. at 863, 106 S.Ct. 2295; *The Plymouth,* 3 Wall. 20, 70 U.S. 20, 35–36, 18 L.Ed. 125 (1865). A party may satisfy the locality test even when the negligence occurred on land, so long as the injury occurred on navigable waters. *Taylor v. Kennedy Engine, Inc.* 861 F.2d 127, 128–29 (5th Cir. 1988); *Parker v. Gulf City Fisheries,* 803 F.2d 828, 829–830 (5th Cir.1986). The maritime nexus test, on the other hand, involves a determination of whether the tort has "a potentially disruptive impact on maritime commerce," and whether the "activity giving rise to the incident [bears] ... a substantial relationship to traditional maritime activity." *Grubart, Inc.,* 513 U.S. at 534, 115 S.Ct. 1043 (citing *Sisson v. Ruby,* 497 U.S. 358, 365–64, & n. 2, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)); *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 673–75, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Executive Jet Aviation, Inc.,* 409 U.S. 249, 253–54, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

Because the alleged injuries (i.e., a depletion of fisheries in Corpus Christi, Nueces, and Oso Bays) occurred on navigable waters, appellees satisfied the locality test. *See Taylor,* 861 F.2d at 128–29; *Parker,* 803 F.2d at 829–30. We must therefore proceed to the maritime nexus test.

The Supreme Court, in *Grubart,* explained that the maritime nexus test involves two components:

A court first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the

incident shows a substantial relationship to traditional maritime activity.

*Grubart, Inc.,* 513 U.S. at 534, 115 S.Ct. 1043.

■ We first note that in the present case there is no summary judgment evidence that appellees' pipeline carried oil over navigable waters. Because we must indulge all reasonable inferences in favor of appellants, the non-movants, we presume the pipeline was a land based pipeline, which transported oil over land and non-navigable waters. Thus, the incident involved the rupture of an oil pipeline over a non-navigable creek, resulting in oil being deposited into the navigable waters of Corpus Christi, Nueces, and Oso Bays. Certainly, the spilling of large quantities of oil into a creek which feeds into navigable waters has a potentially disruptive impact on maritime commerce.

■ Whether such an activity bears a substantial relationship to traditional maritime activity is another matter. The relevant activity "is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *Sisson,* 497 U.S. at 364, 110 S.Ct. 2892. As the Supreme Court noted in *Grubart,* "[t]he substantial relationship test is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." *Grubart,* 513 U.S. at 541, 115 S.Ct. 1043. The test focuses on the "comparison of traditional maritime activity to the arguably maritime character of the tortfeasor's activity in a given case." *Id.* Thus, the nature of the plaintiff's activity is irrele-

vant to the substantial relationship component of the maritime nexus test. *Id.* But see *Union Oil Co. v. Oppen,* 501 F.2d 558 (9th Cir.1974) (admiralty jurisdiction existed in an oil spill case because commercial fishing was substantially related to traditional maritime activity); *In re Motor Ship Pac. Carrier,* 489 F.2d 152 (5th Cir.), *cert. denied,* 417 U.S. 931, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974) (admiralty jurisdiction existed when smoke from land based mill obstructed navigation over a ship channel, causing a vessel to collide with a bridge).

Here, the relevant activity was the transportation of oil across land and non-navigable waters. Such activity does not bear a substantial relationship to traditional maritime activity. Although the subsequent cleanup of oil by appellees is arguably substantially related to a traditional maritime activity, the Supreme Court has held that the relevant activity is the "activity giving rise to the incident." *Grubart,* 513 U.S. at 540, 115 S.Ct. 1043; *Sisson,* 497 U.S. at 364, 110 S.Ct. 2892.

■ Appellees note that courts have found oil spills from vessels on navigable waters to be maritime torts. *See In re Exxon Valdez,* 767 F.Supp. 1509, 1512 (D.Alaska 1991). The present case is distinguishable from such cases. In this case, the oil spill did not involve a vessel and did not occur on navigable waters. We conclude appellees failed to satisfy the maritime nexus test and that admiralty jurisdiction was not invoked.[3] Consequently, the trial court erred in granting summary judgment on the basis that general maritime law preempted appellants' state claims.[4] Appellants' first and third issues are sustained.

3. Because this argument is dispositive, we need not address appellants' remaining arguments in issues one and three.

4. Appellees urge that we engage in a state law analysis to determine whether appellants can recover for purely economic damages resulting from negligent interference with contracts, because, if the outcome would be the same under both maritime and state law, con-

sideration of choice of law is a mere academic pursuit. *See Gorman v. Life Ins. Co. of N. Am.,* 811 S.W.2d 542, 548 (Tex.1991); *Engstrom v. First Nat. Bank of Eagle Lake,* 936 S.W.2d 438, 442 (Tex.App.—Houston [14th Dist.] 1996, writ denied). We decline to review state law as a defense to appellants' negligence claims, however, as appellees failed to raise such a defense in the motion for summary judgment. *Stiles v. Resolution*

By their second issue, appellants assert the trial court erred in granting summary judgment because appellees failed to negate the reliance element of appellants' fraud claim as a matter of law.[5] Because this portion of the motion was raised as a traditional motion under rule 166a(b) of the Texas Rules of Civil Procedure, appellees had the burden to establish, by summary judgment evidence, there was no genuine issue of material fact as to an essential element of appellants' claim for fraud. TEX. R. CIV. P. 166a(b); *Hartford Cas. Ins. Co. v. Albertsons Grocery Stores*, 931 S.W.2d 729, 732 (Tex.App.—Fort Worth 1996, no writ). In their motion for summary judgment, appellees explain that because appellants only bought and sold seafood and were not in a position to respond to the spill, appellants could not have relied on Tuttle's representations regarding the size of the spill. Appellees did not, however, present any summary judgment evidence in support of these allegations. The allegations set forth in appellees' motion for summary judgment do not constitute competent summary judgment evidence. *See Americana Motel, Inc. v. Johnson*, 610 S.W.2d 143, 143 (Tex.1980) (pleadings do not constitute summary judgment evidence); Dean M. Swanda, *Summary Judgment Practice*, 46 BAYLOR L. REV. 721, 725 (1994) ("the motion for summary judgment, the response to a motion for summary judgment, statements in a brief and extrinsic evidence, either oral or documentary, are not proper summary judgment evidence"). Accordingly, appellees failed to carry their burden to negate an essential element of appellants' fraud claim as a matter of law. Thus, the trial court erred in granting summary judg-

ment as to appellants' fraud claim. Appellants' second issue is sustained.

The judgment of the trial court is REVERSED and REMANDED.

---

*Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993) (summary judgment cannot be affirmed on grounds not expressly set forth in the motion or response).

5. We note that because we have held admiralty jurisdiction was not invoked and that general admiralty law was not applicable, the

fraud claim was not barred by the rule in *Robins Dry Dock*. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 308–09, 48 S.Ct. 134, 72 L.Ed. 290 (1927) (no recovery for economic loss absent physical injury to a proprietary interest).