NUMBER 13-99-298-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


SEVEN SEAS FISH MARKET, INC., ET AL.
, Appellants,


v.



KOCH GATHERING SYSTEMS, INC. 

AND RICHARD TUTTLE
, Appellees.

___________________________________________________________________


On appeal from the 148th District Court


of Nueces County, Texas.


____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez(1), and Rodriguez


Opinion by Justice Rodriguez 




 Seven Seas Fish Market, Inc., and five other corporations,
appellants, appeal from a summary judgment in favor of appellees, Koch
Gathering Systems, Inc. and Richard Tuttle, individually, and as a
representative of Koch. Appellants challenge the summary judgment by
three issues. We reverse and remand.

 Appellants are Texas corporations engaged in the wholesale
purchasing and selling of seafood. On or about October 8, 1994, an oil
pipeline owned by Koch ruptured, causing crude oil to leak into Gum
Hollow Creek. The creek deposited oil into Nueces, Corpus Christi, and
Oso Bays. Appellants filed suit against appellees, alleging that the oil
spill caused a reduction in seafood catch by commercial fishermen,
which, in turn, disrupted appellants' operations. Appellants sought
economic damages for negligence and gross negligence based on, inter
alia, appellees' alleged failure to properly design and maintain the
pipeline and failure to respond adequately to the oil spill. Appellants
also brought a claim of fraud based on an allegation that Tuttle,
individually, and as a representative of Koch, made representations to
the public minimizing the severity of the oil spill, resulting in an
inadequate response and exacerbating the damages. 

 Appellees filed a motion for summary judgment, asserting federal
maritime law preempted state law, and precluded appellants' claims for
economic damages. According to the motion, the maritime common-law rule that there can be no recovery 

for economic loss absent physical injury to a proprietary interest
precluded any recovery by appellants. See Robins Dry Dock & Repair
Co. v. Flint, 275 U.S. 303, 308-09 (1927). The motion also asserted
appellants did not rely on any misrepresentation, which negated
appellants' claim of fraud.(2) The trial court granted the motion for
summary judgment. 

 By their first and third issues, appellants contend the trial court
erred in granting summary judgment because appellees did not
establish, as a matter of law, that maritime law was applicable or that
it preempted state law. Appellants further contend that even if
maritime law preempted state law, their claims for economic damages
were not barred. 

 We review an appeal from the granting of a summary judgment
by determining whether the summary judgment proof conclusively
establishes that there is no genuine issue of material fact as to one or
more of the essential elements of the plaintiff's cause of action or
whether the defendant has established all elements of an affirmative
defense. Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996); Gibbs v.
General Motors Corp., 450 S.W.2d 827, 828 (Tex.1970); Crain v. Smith,
22 S.W.3d 58, 59 (Tex. App.--Corpus Christi 2000, no pet.). All
evidence favorable to the non-movant will be taken as true and all
reasonable inferences must be indulged in favor of the non-movant. 
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49
(Tex.1985); Crain, 22 S.W.3d at 59. A defendant moving for summary
judgment on an affirmative defense has the burden to conclusively
establish that defense. Velsicol Chem. Corp. v. Winograd, 956 S.W.2d
529, 530 (Tex. 1997).

 Preemption is an affirmative defense. Stier v. Reading & Bates
Corp., 992 S.W.2d 423, 436 (Tex. 1999). As such, it must be
established as a matter of law at the summary judgment stage. Id.
(citing Kiefer v. Continental Airlines, Inc., 882 S.W.2d 496, 497-98 (Tex.
App.--Houston [1st Dist.] 1994), aff'd, 920 S.W.2d 274 (Tex. 1996)).

 Appellants first contend appellees failed to establish the instant
case is governed by general maritime law. Article III, Section 2 of The
United States Constitution provides federal courts with jurisdiction over
admiralty and maritime cases. U.S. Const. art. III, § 2. Congress has
further given federal district courts "original jurisdiction . . . of . . . any
civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). 
When a cause of action is cognizable in admiralty, regardless of
whether the action is brought in state or federal court, the substantive
law to be applied is general maritime law as developed by the federal
courts. Jansson v. Swedish Am. Line, 185 F.2d 212, 216 (1st. Cir.
1950); see East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S.
858, 863 (1986) ("[w]ith admiralty jurisdiction comes the application of
substantive admiralty law"); Executive Jet Aviation, Inc. v. City of
Clevland, 409 U.S. 249, 255 (1972); Keefe v. Bahama Cruise Line, Inc.,
867 F.2d 1318, 1320 (11th Cir. 1989); David P. Lewis, Note: The Limits
of Liability: Can Alaska Oil Spill Victims Recover Pure Economic Loss?,
10 Alaska L. Rev. 87, 89-90 (1993). In other words, "[t]he 'savings to
suitors' clause of 28 U.S.C. 1333(1) permits state courts to adjudicate
maritime actions 'constrained by the 'reverse-Erie' doctrine which
requires that substantive remedies afforded by States conform to
governing federal maritime standards.'" Texaco Ref. and Mktg., Inc. v.
Estate of Dau Van Tran, 808 S.W.2d 61, 64 (Tex. 1991) (quoting
Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207 (1986)).

 To invoke admiralty jurisdiction, a party must satisfy both the
locality and maritime nexus tests. Executive Jet Aviation, 409 U.S. at
261. The former requires a determination of "whether the tort occurred
on navigable water or whether injury suffered on land was caused by
a vessel on navigable water." Grubart, Inc. v Great Lakes Dredge &
Dock Co., 513 U.S. 527, 534 (1995); see East River S.S. Corp., 476 U.S.
at 863; The Plymouth, 70 U.S. 20, 35-36 (1865). A party may satisfy
the locality test even when the negligence occurred on land, so long as
the injury occurred on navigable waters. Taylor v. Kennedy Engine, Inc.
861 F.2d 127, 128-29 (5th Cir. 1988); Parker v. Gulf Cities Fisheries,
803 F.2d 828, 829-830 (5th Cir. 1986). The maritime nexus test, on the
other hand, involves a determination of whether the tort has "a
potentially disruptive impact on maritime commerce," and whether the
"activity giving rise to the incident [bears] . . . a substantial relationship
to traditional maritime activity." Grubart, Inc., 513 U.S. at 863 (citing
Sisson v. Ruby, 497 U.S. 358, 365-64, & n.2 (1990)); Foremost Ins. Co.
v. Richardson, 457 U.S. 668, 673-75 (1982); Executive Jet Aviation,
Inc., 409 U.S. 249, 253-54 (1972). 

 Because the alleged injuries (i.e., a depletion of fisheries in Corpus
Christi, Nueces, and Oso Bays) occurred on navigable waters, appellees
satisfied the locality test. See Taylor, 861 F.2d at 128-29; Parker, 803
F.2d at 829-30. We must therefore proceed to the maritime nexus test. 


 The Supreme Court, in Grubart, explained that the maritime nexus
test involves two components:

 A court first, must assess the general features of
the type of incident involved to determine
whether the incident has a potentially disruptive
impact on maritime commerce. Second, a court
must determine whether the general character of
the activity giving rise to the incident shows a
substantial relationship to traditional maritime
activity.


Grubart, Inc., 513 U.S. at 863.

 We first note that in the present case there is no summary
judgment evidence that appellees' pipeline carried oil over navigable
waters. Because we must indulge all reasonable inferences in favor of
appellants, the non-movants, we presume the pipeline was a land
based pipeline, which transported oil over land and non-navigable
waters. Thus, the incident involved the rupture of an oil pipeline over
a non-navigable creek, resulting in oil being deposited into the navigable
waters of Corpus Christi, Nueces, and Oso Bays. Certainly, the spilling
of large quantities of oil into a creek which feeds into navigable waters
has a potentially disruptive impact on maritime commerce.

 Whether such an activity bears a substantial relationship to
traditional maritime activity is another matter. The relevant activity "is
defined not by the particular circumstances of the incident, but by the
general conduct from which the incident arose." Sisson, 497 U.S. at
364. As the Supreme Court noted in Grubart, "[t]he substantial
relationship test is satisfied when at least one alleged tortfeasor was
engaging in activity substantially related to traditional maritime activity
and such activity is claimed to have been a proximate cause of the
incident." Grubart, 513 U.S. at 541. The test focuses on the
"comparison of traditional maritime activity to the arguably maritime
character of the tortfeasor's activity in a given case." Id. Thus, the
nature of the plaintiff's activity is irrelevant to the substantial
relationship component of the maritime nexus test. Id. But see Union
Oil Co. v. Oppen, 501 F.2d 558 (9th Cir. 1974) (admiralty jurisdiction
existed in an oil spill case because commercial fishing was substantially
related to traditional maritime activity); In re Motorship Pac. Carrier, 489
F.2d 152 (5th Cir.), cert. denied, 417 U.S. 931 (1974) (admiralty
jurisdiction existed when smoke from land based mill obstructed
navigation over a ship channel, causing a vessel to collide with a
bridge). 

 Here, the relevant activity was the transportation of oil across land
and non-navigable waters. Such activity does not bear a substantial
relationship to traditional maritime activity. Although the subsequent
cleanup of oil by appellees is arguably substantially related to a
traditional maritime activity, the Supreme Court has held that 

the relevant activity is the "activity giving rise to the incident." Grubart,
513 U.S. at 540; Sisson, 497 U.S. at 364. 

 Appellees note that courts have found oil spills from vessels on
navigable waters to be maritime torts. See In re Exxon Valdez, 767
F.Supp. 1509, 1512 (D. Alaska 1991). The present case is
distinguishable from such cases. In this case, the oil spill did not
involve a vessel and did not occur on navigable waters. We conclude
appellees failed to satisfy the maritime nexus test and that admiralty
jurisdiction was not invoked.(3) Consequently, the trial court erred in
granting summary judgment on the basis that general maritime law
preempted appellants' state claims.(4) Appellants' first and third issues
are sustained. 

 By their second issue, appellants assert the trial court erred in
granting summary judgment because appellees failed to negate the
reliance element of appellants' fraud claim as a matter of law.(5) Because
this portion of the motion was raised as a traditional motion under rule
166a(b) of the Texas Rules of Civil Procedure, appellees had the burden
to establish, by summary judgment evidence, there was no genuine
issue of material fact as to an essential element of appellants' claim for
fraud. Tex. R. Civ. P. 166a(b); Hartford Cas. Ins. Co. v. Albertsons
Grocery Stores, 931 S.W.2d 729, 732 (Tex. App.--Fort Worth 1996, no
writ). In their motion for summary judgment, appellees explain that
because appellants only bought and sold seafood and were not in a
position to respond to the spill, appellants could not have relied on
Tuttle's representations regarding the size of the spill. Appellees did
not, however, present any summary judgment evidence in support of
these allegations. The allegations set forth in appellees' motion for
summary judgment do not constitute competent summary judgment
evidence. See Americana Motel, Inc. v. Johnson, 610 S.W.2d 143, 143
(Tex. 1980) (pleadings do not constitute summary judgment evidence);
Dean M. Swanda, Summary Judgment Practice, 46 Baylor L. Rev. 721,
725 (1994) ("the motion for summary judgment, the response to a
motion for summary judgment, statements in a brief and extrinsic
evidence, either oral or documentary, are not proper summary judgment
evidence"). Accordingly, appellees failed to carry their burden to negate
an essential element of appellants' fraud claim as a matter of law. 
Thus, the trial court erred in granting summary judgment as to
appellants' fraud claim. Appellants' second issue is sustained.

 The judgment of the trial court is REVERSED and REMANDED.

 NELDA V. RODRIGUEZ

 Justice

Publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 11th day of January, 2001. 

1. Retired Justice Melchor Chavez assigned to this Court by the Chief
Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. §
74.003 (Vernon 1998).
2. Appellees contend the portion of the motion for summary judgment
addressing appellants' fraud claim was a no-evidence motion under rule
166a(i) of the Texas Rules of Civil Procedure. The authority cited by appellees
in their motion, however, refers only to a traditional motion for summary
judgment in which the defendant must conclusively disprove an essential
element of the plaintiff's cause of action. Union Pump Co. v. Albritton, 898
S.W.2d 773 (Tex. 1995); see also Tex. R. Civ. P. 166a(b). Appellees' motion
fails to state there is no evidence supporting the element of reliance. Instead,
the motion provides:


 Although Plaintiffs allege that Tuttle's representations
of the size of the oil spill resulted in an inadequate
response to the spill, they only bought and sold fish
products and were not in a position to provide any
response to the spill. Because Plaintiffs were never in
a position to act in reliance on Tuttle's representations
regarding the size of the spill, they cannot satisfy one
of the essential elements of a claim for fraud. 


 Appellants filed a reply to appellees' motion, which argued that
appellees "filed their motion for summary judgment under the traditional (as
opposed to 'no-evidence') summary judgment rules." Appellees' response to
appellants' reply did not rebut the characterization of their motion as a
traditional motion for summary judgment. 

 The comment to rule 166a(i) provides, in part, "[t]he motion must be
specific in challenging the evidentiary support for an element of a claim or
defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." Tex. R. Civ. P. 166a(i) cmt. In
Thomas v. Clayton Williams Energy, Inc., 2 S.W.3d 734, 741 n. 1 (Tex.
App.­Houston [14th Dist.] 1999, no pet.), our sister court held that where it
was unclear whether a party moved for summary judgment on the traditional
basis of conclusively negating an element of the plaintiff's cause of action as
set forth in rule 166a(b), or on the basis that there was no evidence to support
an element of the plaintiff's cause of action under rule 166a(i), there was
insufficient notice that the motion was brought under rule 166a(i). Here,
based on the law cited in the motion and construing the summary judgment
motion in its entirety, it appears appellees moved for summary judgment as
against appellants' fraud claim under rule 166a(b). That is, appellees sought
to conclusively disprove the element of reliance. Therefore, our review of the
motion for summary judgment is limited to whether appellees established
maritime preemption as a matter of law and whether they disproved the
reliance element of appellants' fraud claim as a matter of law. 
3. Because this argument is dispositive, we need not address appellants'
remaining arguments in issues one and three.
4. Appellees urge that we engage in a state law analysis to determine
whether appellants can recover for purely economic damages resulting from
negligent interference with contracts, because, if the outcome would be the
same under both maritime and state law, consideration of choice of law is a
mere academic pursuit. See Gorman v. Life Ins. Co. of N. Am., 811 S.W.2d
542, 548 (Tex. 1991); Engstrom v. First Nat. Bank of Eagle Lake, 936 S.W.2d
438, 442 (Tex. App.­Houston [th Dist.] 1996, writ denied). We decline to
review state law as a defense to appellants' negligence claims, however, as
appellees failed to raise such a defense in the motion for summary judgment. 
Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex. 1993) (summary
judgment cannot be affirmed on grounds not expressly set forth in the motion
or response). 
5. We note that because we have held admiralty jurisdiction was not
invoked and that general admiralty law was not applicable, the fraud claim
was not barred by the rule in Robins Dry Dock. See Robins Dry Dock & Repair
Co. v. Flint, 275 U.S. 303, 308-09 (1927) (no recovery for economic loss
absent physical injury to a proprietary interest).