IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 17, 2007

Charles R. Fulbruge III
Clerk

No. 06-41227

ROBERT ABT,

Plaintiff-Appellant,

V.

DICKSON COMPANY OF TEXAS, and GREENSPORT SHIP CHANNEL
PARTNERS, L.P.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
(06-CV-129)

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of Defendant-Appellee
Greens Port Ship Channel Partners, L.P.'s ("Greens Port")[1] motion to dismiss for
lack of subject matter jurisdiction. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

[1] Greens Port is the only named defendant which answered the suit in district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Robert Abt worked as a longshoreman crane operator for Richardson Stevedoring & Logistics ("Richardson") at Greens Port Terminal on the Houston Ship Channel (the "Ship Channel"). Abt operated a water-front crane that was specifically modified and positioned to load and unload vessels at Greens Port. In January 2006, a vessel departed from Greens Port after Richardson completed cargo operations for the ship. After the vessel departed from the port, Abt was instructed to "walk"[2] the crane down the dock so that a vessel scheduled to arrive the next day could safely dock at Greens Port. According to Abt, in completing this maneuver, the crane experienced shaking and racking forces due to rails and other obstacles on Greens Port's dock. Before he finished moving the crane, the pedestal supporting the raised cab sheared at its base, causing Abt and parts of the crane to fall into the Ship Channel. After he fell, Abt held on to a fender for approximately thirty minutes until rescuers reached the scene. Abt suffered a number of serious injuries.

The Abts filed suit in federal district court pursuant to its admiralty jurisdiction under Fed. R. Civ. P. 9(h), asserting claims of negligence, gross negligence, premises liability, and other torts. Greens Port filed a motion to dismiss for lack of subject matter jurisdiction, arguing pursuant to Sisson v. Ruby, 497 U.S. 358 (1990), that the Abts' claims fell outside the court's admiralty and maritime jurisdiction. On June 22, 2006, the district court granted the motion. The Abts timely filed a notice of appeal.

## II. DISCUSSION

We review a district court's grant of a motion to dismiss for lack of subject matter jurisdiction de novo. Nat'l Athletic Trainers' Ass'n v. United States Dep't of Health and Human Servs., 455 F.3d 500, 502 (5th Cir. 2006).

---

[2] In this context, walking refers to moving the crane from the water front to the far end of the dock.

District courts have original jurisdiction, exclusive of the courts of the states, of "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 251 (1972) (quoting 28 U.S.C. § 1333(1)). To establish admiralty jurisdiction, first, "the tort must have a maritime situs;" and second, "the alleged wrong must bear a significant relationship to traditional maritime activity." Taylor v. Kennedy Engine, Inc., 861 F.2d 127, 128 (5th Cir. 1988) (citing Executive Jet, 409 U.S. 249)); Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). The maritime situs test analyzes "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." Grubart, 513 U.S. at 534 (citing 46 U.S.C. App. § 740). The court applies a two-part analysis to determine whether a sufficient connection exists between the injury and maritime activity: (1) whether the incident has a potentially disruptive impact on maritime commerce; and (2) whether "the general character of the activity giving rise to the incident shows a substantial relationship [to] traditional maritime activity." Id. (quoting Sisson, 497 U.S. at 364).

The district court held that this case satisfies the locality test because Abt was injured once he hit the water, and his injuries were likely exacerbated by the fact that he remained in the channel for approximately thirty minutes before being rescued. The district court also determined that the incident could have potentially disrupted maritime commerce since Abt had to be rescued and debris removed. However, that court concluded that Abt failed to demonstrate that his actions at the time of the incident were substantially related to maritime activity. As the district court explained, Abt was merely moving the crane from one end of the dock to another; he was not servicing or even preparing to service a vessel at the time of the incident.

The Abts central contention on appeal is that the district court erred in making that final determination.[3] In support of their position they highlight the following facts: that the crane was specifically engineered and designed to service vessels, and that Abt's job, providing support and assisting with cargo operations, has been considered a maritime activity. In light of this, they assert that the district court should have found that Abt's task of walking the crane was substantially related to maritime activity. Their argument is unpersuasive.

Case law has established that traditional admiralty law exists to provide a legal framework for disputes involving vessels and seamen. See Executive Jet, 409 U.S. at 269-70 (1972) ("[Admiralty law] deals with navigational rules . . . that govern the manner and direction [by which] vessels may rightly move upon the waters."); Taylor, 861 F.2d at 130 ("Admiralty has traditionally been concerned with the protection of seamen injured in the course of service to their vessel . . ."). While there are instances where incidents involving land-based cranes are deemed to have a substantial relationship to maritime activity, see Kamani v. Port of Houston Authority, 702 F.2d 612 (5th Cir. 1983) (explaining that the claims of a longshoreman who was working aboard a vessel was injured while trying to escape the descending jaws of a land-based crane were maritime in nature), this case does not present such an instance. Had Abt actually been servicing a vessel when this incident occurred, the Abts argument would be considerably stronger. But that is not the factual situation we are presented with in this case. It is uncontested that Abt was walking the crane on the dock, and that there were no vessels on or near the dock at the time of the incident. As such, Abt's land-based movements which gave rise to the incident do not fit within traditional definitions of maritime activity. To find that the Abts' claims fall within the admiralty and maritime jurisdiction of federal courts would

---

[3] Because we can resolve this appeal by addressing this claim alone, we need not address whether the district court correctly applied the maritime situs test.

greatly expand that jurisdictional grant to include cases and controversies that have been historically and purposefully excluded.  This we will not do.

Abt's injuries, while tragic, were "only fortuitously and incidentally connected to navigable waters [and bear] no relationship to traditional maritime activity."  Executive Jet, 409 U.S. at 273.  Therefore, the Abts' lawsuit fails to satisfy the requirements of federal admiralty jurisdiction.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.