**Dee Ann NGUYEN and Minh Nguyen, Appellant,**

v.

**Dr. Poong Young KIM, Appellee.**

No. 14–98–00728–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 9, 1999.

148

Raymond Vance Jobe, Dallas, for appellants.

John C. Marshall, Houston, for appellees.

Panel consists of Justices YATES, FOWLER and FROST.

## O P I N I O N

KEM THOMPSON FROST, Justice.

At issue in this case is the propriety of the trial court's dismissal of a medical malpractice lawsuit based on the plaintiffs' failure to timely comply with the expert report requirements of the Texas Medical Liability Act (the "Medical Liability Act").

### INTRODUCTION

The appellants, Dee Ann Nguyen and Minh Nguyen (collectively, the "Nguyens") filed suit against the appellee, Dr. Poong Young Kim ("Dr.Kim"), alleging medical malpractice and violations of the Texas Deceptive Trade Practices Act ("DTPA") based on medical procedures performed on Mrs. Nguyen. After the Nguyens failed to timely file a report of a medical expert, the trial court refused their request for an extension and dismissed their claims with prejudice. In three issues presented for our review, the Nguyens challenge the trial court's rulings. We affirm.

### FACTUAL BACKGROUND

In March of 1995, Dee Ann Nguyen sought medical care from Dr. Kim, a medical doctor specializing in the field of obstetrics and gynecology. Mrs. Nguyen, who was pregnant at the time and who had recently been in an automobile accident, complained of vaginal bleeding and severe epigastric pain. Dr. Kim told Mrs. Nguyen that her pregnancy would not survive as a result of the automobile collision, and recommended that she undergo a dilation and curettage procedure. Mrs. Nguyen consented and Dr. Kim performed the procedure. Mrs. Nguyen, however, continued to suffer the same symptoms and went back to Dr. Kim, who performed a second dilation and curettage. When the second procedure still did not eliminate the problem, Dr. Kim suggested a third dilation and curettage. At that point, Mrs. Nguyen refused any further treatment from Dr. Kim.

Approximately two years later, Mrs. Nguyen and her husband filed suit against Dr. Kim, alleging that he had improperly performed the dilation and curettage and that he had failed to obtain Mrs. Nguyen's informed consent prior to performing the two procedures. The Nguyens sought to recover damages for causes of action based on medical malpractice and violations of the DTPA. Having asserted claims based

on medical negligence, the Nguyens were required by statute to file one or more expert reports relating to liability and causation, together with a *curriculum vitae* for each expert, no later than 180 days after suit was filed.[1] The Nguyens filed suit in March 1997, which made their expert report due in September 1997. In early June 1997, the Nguyens' attorney filed an affidavit with the court stating that he had obtained an expert report, but failed to file it with the court. Approximately a month after their September deadline for filing the expert report had passed, the Nguyens filed a motion seeking leave from the trial court to file a late expert report. Dr. Kim opposed the motion and asked the court to dismiss the lawsuit based on the Nguyens' failure to comply with the statutory deadline.[2] Several months later the trial court denied the Nguyens' motion for an extension of the deadline and dismissed their entire lawsuit, with prejudice. The Nguyens now present three issues for appellate review, all of which arise out of the trial court's dismissal of their claims.

### DISMISSAL OF THE *DTPA* CLAIMS

■ In their first issue, the Nguyens assert the trial court erred in dismissing their DTPA claims against Dr. Kim because those claims are not "health care liability claims," as defined by the Medical Liability Act. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4) (Vernon Supp.1998). The Medical Liability Act expressly bars DTPA claims based on negligence.[3] Thus, to the extent the Nguyens' DTPA claims are based on Dr. Kim's negligence, they are expressly barred by the Medical Liability Act. In *Sorokolit v. Rhodes,* 889 S.W.2d 239 (Tex.1994), the Texas Supreme

Court distinguished DTPA claims based on negligence from other DTPA claims, holding:

> There can be no DTPA claim against a physician for damages for personal injury or death if the damages result, or are alleged to result, from the physician's negligence; however, if the alleged DTPA claim is not based on the physician's breach of the accepted standard of medical care, section 12.01(a) does not preclude suit for violation of the DTPA.

*Id.* at 242. To determine whether a DTPA claim is based on negligence, the court does not focus merely on the plaintiff's pleading, but looks to the underlying nature of the claim which "determines whether section 12.01(a) prevents suit for violation of the DTPA." *Id.* Claims alleging that a physician or health care provider was negligent "may not be recast as DTPA actions to avoid the standards set forth in the Medical Liability and Insurance Improvement Act." *Id.*

■ A review of the Nguyens' DTPA claims reveals that they are nothing more than negligence claims falling squarely under the Medical Liability Act. The Nguyens' petition alleges three violations of the DTPA. The first asserts that Dr. Kim violated the DTPA by "performing the dilation and curettage procedures which were represented as the appropriate and best treatment for Plaintiff's condition." Despite the Nguyens' attempts to bring their claims within the DTPA, the essence of their claim is that Dr. Kim failed to perform the appropriate procedure necessary to treat Mrs. Nguyen's condition. To prove this claim, the Nguyens would have to prove a breach of the applicable standard of care for health care providers.

---

1. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d) (Vernon Supp.1998).

2. If the plaintiff fails to timely provide the report, the trial court "shall, on the motion of the affected physician or health care provider, enter an order" dismissing the suit with prejudice. *Id.* § 13.01(e).

3. "Notwithstanding any other law, no provisions of [the DTPA] shall apply to physicians or health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider." *Id.* § 12.01(a).

Therefore, this claim is precisely the type of DTPA claim the Medical Liability Act and *Sorokolit* prohibit.

■ The Nguyens' remaining DTPA claims fare no better under the Medical Liability Act. They assert that Dr. Kim violated the DTPA by "failing to disclose information concerning the risks and consequences of the procedures so that Plaintiff would have all of the necessary information with which to consent to the procedures;" and "[taking] advantage of the lack of knowledge, experience or capacity of Plaintiff to an unfair degree." These claims assert nothing more than Dr. Kim's failure to obtain informed consent before performing the dilation and curettage procedures. Section 6.02 of the Medical Liability Act states:

> In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

*Id.* § 6.02. In addition, the Texas Supreme Court has expressly stated that an action for the failure of a doctor to fully inform a patient of the risks of surgery is a negligence cause of action. *See McKinley v. Stripling,* 763 S.W.2d 407, 409 (Tex.1989). Therefore, we find the Nguyens' DTPA claims are negligence claims prohibited by the Medical Liability Act. We overrule the Nguyens' first issue.

### DISMISSAL OF MEDICAL NEGLIGENCE CLAIMS UNDER SECTION 13.01(e) OF THE MEDICAL LIABILITY ACT

■ In their second issue, the Nguyens assert the trial court erred in dismissing their medical negligence claims because Dr. Kim did not file a "motion," as required by section 13.01(e) of the Medical Liability Act, which provides that if the plaintiff fails to timely provide the report, the trial court "shall, *on the motion of the affected physician or health care provider,* enter an order" dismissing the suit with prejudice. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(e) (emphasis added). Dr. Kim did not make his request for dismissal of the Nguyens' claims in the form of a formal motion, but instead included it in his response to the Nguyens' motion for an extension of the statutory deadline. In his response, Dr. Kim expressly requested the court (1) to deny the Nguyens' request for leave to file the expert report late, and (2) to dismiss the Nguyens' suit with prejudice.

■ It is well settled that in determining the nature of a pleading, we look to the substance of the plea for relief, not merely the form of title given to it. *See* TEX.R. CIV. P. 71; *State Bar of Tex. v. Heard,* 603 S.W.2d 829, 833 (Tex.1980). Here, it is clear that Dr. Kim's purpose in responding to the Nguyens' motion was to urge the trial court to deny any relief that would allow the Nguyens to file a late expert report *and* to seek a dismissal of the case based on their failure to comply with the Medical Liability Act. From the record, it is clear that the Nguyens interpreted Dr. Kim's request for dismissal as a motion. Their reply to Dr. Kim's response urged the court not to dismiss the case and made specific arguments against dismissal. There is no question that the Nguyens had notice and an opportunity to respond to the request for dismissal and that they took full advantage of that opportunity. While the better practice is to label and identify a request for dismissal under section 13.01(e) as a "motion," the failure to do so is not fatal where the pleader's intent is clear and the filed papers containing the request are sufficient to give notice to the court and the opposing party that an order of dismissal with prejudice is being sought. Dr. Kim's response, although not

entitled a "motion," was sufficient to satisfy the requirements of section 13.01(e). We overrule the Nguyens' second issue.

### EXTENSION OF DEADLINE FOR FILING EXPERT REPORT UNDER SECTION 13.01(g) OF THE MEDICAL LIABILITY ACT

In their final issue, the Nguyens assert the trial court erred in denying them a thirty-day grace period under section 13.01(g) of the Medical Liability Act to file the requisite expert reports. Section 13.01(g) states:

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(g) (Vernon Supp.1998).

 In determining whether there was intentional disregard or conscious indifference, the trial court must look to the knowledge and acts of the party who has suffered the consequences of the error and who now asks for relief. *See Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex.1984). We review the trial court's decision for an abuse of discretion. *See Wood v. Tice*, 988 S.W.2d 829, 832 (Tex.App.—San Antonio 1999, pet. denied); *Estrello v. Elboar*, 965 S.W.2d 754, 758 (Tex.App.—Fort Worth 1998, no pet.). The trial court does not abuse its discretion when it bases its decision on conflicting evidence. *See Wood*, 988 S.W.2d at 832.

### Prerequisites for Relief Under Section 13.01(g)

It is clear from the mandatory language of section 13.01(g) that the trial court must grant an extension if the party seeking the grace period has filed a motion that affirmatively demonstrates:

1. the failure to timely file an expert report was not intentional or the result of conscious indifference but was the result of an accident or mistake; and
2. the motion for relief under section 13.01(g) was filed before any hearing on a motion by a defendant under section 13.01(e).

Here, the Nguyens filed their motion seeking an extension under section 13.01(g) before Dr. Kim requested a dismissal under section 13.01(e); thus, their section 13.01(g) motion is considered timely filed.

We now consider whether the trial court abused its discretion in determining that the Nguyens' proffered explanation for their failure to timely file their expert report did not meet the "accident or mistake" standard. If the Nguyens established that their failure to file was not intentional or the result of conscious indifference, but was the result of an accident or mistake, then they were entitled to an extension under the mandatory language of section 13.01(g) and the trial court abused its discretion in refusing to grant the relief. If, on the other hand, they did not meet the standard, then the trial court did not abuse its discretion in denying their motion for leave to file their expert reports late.

### The Meaning of "Conscious Indifference" and "Accident or Mistake" Under Section 13.01(g)

The Medical Liability Act does not define what constitutes intentional acts or conscious indifference, nor does it provide any definitions or guidance as to what is considered an accident or mistake. The familiar wording of the statute utilizes es-

sentially the same language Texas courts apply in the default judgment context under the well known case of *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). The same language is also found in rule 165(a)(3), Texas Rules of Civil Procedure, governing the reinstatement of cases after dismissal for want of prosecution. For this reason, courts interpreting section 13.01(g) have concluded that the Texas legislature intended section 13.01(g) to be applied in the same manner in determining whether there was intentional disregard of or conscious indifference to the expert report requirements of the Medical Liability Act. *See, e.g. Horsley–Layman v. Angeles*, 968 S.W.2d 533, 536 (Tex.App.—Texarkana 1998, no pet.); *McClure v. Landis*, 959 S.W.2d 679, 681 (Tex.App.—Austin 1997, pet. denied). Therefore, we look to *Craddock* and its progeny for guidance in applying section13.01(g) to the Nguyens' stated excuse for non-compliance with the statute.

### Evaluation of Stated Excuse for Non-Compliance

 "Some excuse, but not necessarily a good excuse, is enough to warrant an extension of time to file the expert report, so long as the act or omission causing the failure to file the report was, in fact, accidental." *Horsley–Layman*, 968 S.W.2d at 536. Generally, an accident or mistake in this context is characterized by inadequate knowledge of the facts or an unexpected happening that precludes compliance. For example, courts have found that calendaring errors are sufficient to establish "mistake or accident" under

*Craddock.* See *Ferrell v. Ferrell*, 820 S.W.2d 49, 50 (Tex.App.—Corpus Christi 1991, writ den'd); *Kirk v. Farmers Aerial Spraying Service, Inc.*, 496 S.W.2d 739, 741–42 (Tex.Civ.App.—Amarillo 1973, no writ); *Hendricks v. Williams*, 485 S.W.2d 304 (Tex.Civ.App.—Corpus Christi 1972, no writ); *Republic Bankers Life Insurance Company v. Dixon*, 469 S.W.2d 646 (Tex.Civ.App.—Tyler 1971, no writ); *Newsom v. Boyd*, 203 S.W.2d 874, 877 (Tex.Civ. App.—Galveston 1947, no writ). Conscious indifference, on the other hand, means failing to take some action which would seem indicated to a person of reasonable sensibilities under similar circumstances. See *Prince v. Prince*, 912 S.W.2d 367, 370 (Tex.App.—Houston [14th Dist.] 1995, no writ); *see also Guardsman Life Ins. Co. v. Andrade*, 745 S.W.2d 404, 405 (Tex.App.—Houston [1st Dist.] 1987, writ denied) (holding that for negligence to rise to level of conscious indifference, evidence must show that "appellant was clearly aware of the situation and acted contrary to what such awareness dictated."). Proof of accident or mistake negates intent or conscious indifference. *Roberts v. Medical City Dallas Hospital, Inc.*, 988 S.W.2d 398, 403 (Tex.App.—Texarkana 1999, no pet. h.).

 To assist in evaluating the merits of the Nguyens' contention that their failure to timely file their expert report was not due to conscious indifference but was the result of an accident or mistake, we first consider the sequence of events leading up to the non-compliance, including the following key dates:

March 6, 1997 — The Nguyens file suit.

May 25, 1997 — Dr. Kim's counsel sends a letter to the Nguyens' counsel as a reminder of the requirement of filing an expert report and the deadlines under the Medical Liability Act.

June 1, 1997 — The Nguyens' attorney files an affidavit stating that he has a written expert report, but that he has not filed it with the court. (The report is not provided to Dr. Kim.)

June 3, 1997 — Cost bond or expert report is due.[4] Neither is filed.

June 17, 1997 — Dr. Kim files a motion to compel the Nguyens to file a cost bond.

September 11, 1997 — The Nguyens' expert report is due.[5] No expert report is filed.

October 10, 1997 — The Nguyens move for leave to file their expert report late.

October 16, 1997 — Dr. Kim opposes the Nguyens' late filing and requests dismissal of claims for failure to comply with the statute.

April 6, 1998 — Trial court dismisses the Nguyens' claims with prejudice.

Less than a week before the Nguyens were required by statute to file either an expert report or a cost bond, Dr. Kim's attorney sent a letter to the Nguyens' attorney reminding him of the impending deadline. Instead of complying with the express requirements of the statute by filing either an expert report or a cost bond, the Nguyens' attorney filed an affidavit with the court, stating that he "[had] obtained a written opinion from a qualified expert," but he did not file a copy of the report with the court or deliver a copy of it to Dr. Kim or Dr. Kim's counsel. Three months later (and six months after the filing of the lawsuit), the Nguyens *still* had not filed the expert report with the court. Finally, seven months after suit was filed, and four months after the Nguyens' attorney represented to the court that he had obtained an expert report, the Nguyens requested leave to file their report late. The Nguyens' stated excuse for noncompliance was that their counsel was unaware of the statutory requirement for filing expert reports with the court.

Although the Nguyens steadfastly assert that their failure to timely file the expert report was the result of an accident or mistake, the facts in this case belie any such notion. The Nguyens' counsel filed

an affidavit in October 1997, in which he swore that "[a]s soon as [he] became aware of the requirement that an expert report and *curriculum vitae* were required pursuant to article 4590i," he began working to prepare and file them and that they "are filed contemporaneously with the attached Motion For Leave." This explanation is factually inconsistent with the Nguyens' counsel's statement in June 1997 that the Nguyens had "obtained a written opinion from a qualified expert" and that the opinion "states that the acts and omissions of the health care provider were negligent and a proximate cause of the injury, harm and damages claimed." The notion that the Nguyens missed the deadline because their counsel was unaware of the statutory requirement is also inconsistent with the fact that the Nguyens received a letter from Dr. Kim's counsel in May 1997, which specifically identified the statutory requirement and expressly noted that their expert report had to be filed with the court by the stated deadline.

Not every opposing counsel extends the professional courtesy of sending a reminder letter to the claimants' counsel, pointing out an approaching deadline and citing to the applicable statute that mandates the filing. The Nguyens not only failed to

---

4. Section 13.01(a) of the Medical Liability Act requires the plaintiff to file either an expert report or a cost bond within ninety days of the filing of the lawsuit. *See* Tex Rev.Civ. Stat. Ann. art. 4590i, § 13.01(a) (Vernon Supp. 1998).

5. Section 13.01(d) of the Medical Liability Act requires the plaintiff to either file an expert report or non-suit the case within 180 days of the filing of the lawsuit. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon Supp. 1998).

respond to this informal notice, but waited an additional four months to move for an extension. In the interim, they ignored another clear warning made in the motion Dr. Kim filed to compel them to file a cost bond. In that motion, Dr. Kim expressly noted that the Nguyens were required to file either a cost bond or an expert report by June 4, 1997. The Nguyens do not deny that they received this series of warnings and reminders, nor do they attempt to explain why they did not heed them or conduct their own review of the statute after opposing counsel quoted its provisions to them. Instead, they maintain that they nevertheless were unaware of the statute's requirements. Although at least one court interpreting section 13.01(g) has held that failure to read the statute does not demonstrate conscious indifference,[6] in the face of these repeated reminders, the Nguyens' failure to timely file their expert report can hardly be classified as anything else. Certainly, it would strain credibility to conclude from this record, which is replete with notices, warnings and even citations to the statute, that their noncompliance was the result of any unawareness or ignorance of the requirements of the Medical Liability Act. In any event, Texas courts have long held that ignorance or unawareness of a statutory requirement does not excuse a party from missing a deadline. *See, e.g. Allstate Insurance Co. v. King*, 444 S.W.2d 602, 605 (Tex.1969) (holding that the plaintiff's ignorance of the six month's filing requirement of the worker's compensation statute does not excuse a failure to timely comply); *West Columbia Nat'l Bank v. Griffith*, 902 S.W.2d 201, 207–208 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (holding that failure to answer a lawsuit based on a misinterpretation of the law

was insufficient as a matter of law to satisfy the requisite showing for a bill of review.); *Furr v. Furr*, 721 S.W.2d 565, 566 (Tex.App.—Amarillo 1986, no writ) (holding that a *pro se* appellant's failure to file an affidavit under former rule 41(a) of the Texas Rules of Appellate Procedure, due to unfamiliarity with the requirements of the rule does not constitute a "reasonable explanation"[7] for missing the deadline).

This is not a case in which there was a mistake about the facts or inadequate knowledge of the deadline, nor is this a case in which the claimants were genuinely surprised by some unexpected happening that prevented them from taking action in a timely manner. The Nguyens failed to take any action to comply with the statute despite repeated warnings of the *curriculum vitae* deadline and clear notice of their statutory obligation to file their expert report. Absent a clear showing that their failure to timely file was not intentional or the result of conscious indifference but was the result of an accident or mistake, the Nguyens were not entitled to a thirty day grace period under section 13.01(g). Based on the facts presented by this record, including the presence of conflicting evidence, the trial court did not abuse its discretion in refusing to grant the Nguyens the requested relief. Issue three is overruled.

The judgment is affirmed.

---

**6.** *See Roberts*, 988 S.W.2d at 403 (noting that a "failure to read the statute is certainly negligence, but negligence does not equate to conscious indifference.").

**7.** The *Furr* court noted that "reasonable explanation" is defined as "any plausible statement of circumstances indicating that the fail-

ure to file within the required period was not deliberate or intentional, but was the result of inadvertence, mistake, or mischance," 721 S.W.2d at 567 (citing *Lopez v. Foremost Paving, Inc.*, 671 S.W.2d 614, 619 (Tex.App.—San Antonio 1984, no writ)).