Opinion issued July 20, 2006






     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00797-CV




MARINE TRANSPORT CORPORATION, Appellant

V.

THE METHODIST HOSPITAL; THE INSTITUTE FOR PREVENTATIVE
MEDICINE/METHODIST HEALTHCARE SYSTEMS, THE METHODIST
HOSPITAL/INSTITUTE FOR PREVENTATIVE MEDICINE
MANAGEMENT, INC. AND RASHID KHAN, Appellees




On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2002-08597




O P I N I O N

          Appellant, Marine Transport Corporation (Marine), appeals from two motions
to dismiss granted in favor of appellees, The Methodist Hospital, the Institute for
Preventative Medicine/Methodist Health Care Systems, the Methodist
Hospital/Institute for Preventative Medicine Management, Inc. (collectively,
Methodist) and Rashid Khan, M.D. Marine contends in its first issue that the trial
court erred in granting the motions to dismiss by treating its federal maritime law
claims as health care liability claims and by applying former article 4590i of the
Revised Civil Statutes (former article 4590i)


 to its case. Marine alternatively
contends in its second issue that the trial court erred by granting the motions to
dismiss because the trial court abused its discretion by denying Marine’s motion to
extend time to file expert reports in compliance with former article 4590i. We
conclude that although Marine’s maintenance and cure claim arises out of federal
maritime law, former article 4590i applies to Marine’s underlying state-law
negligence claims against Methodist and Dr. Khan. Thus, Marine was required to
comply with the expert report filing requirements under former article 4590i. 
However, we also conclude that the trial court abused its discretion by not granting
Marine a 30-day extension pursuant to section 13.01(g) of former article 4590i to file
its expert reports due to mistake or accident. We thus reverse the judgment of the
trial court and remand this case to the trial court for proceedings consistent with this
opinion.
Background
          Dr. Khan examined Richard Guillory, a member of the Seafarers International
Union (SIU), at Methodist for determination of his fitness for duty as a merchant
seaman on oceangoing vessels pursuant to a Health Facility Provider Agreement (the
Agreement) entered between the Seafarers Welfare Union on behalf of SIU
employees and Methodist. The examination revealed an elevated white blood cell
count and positive testing for syphilis, but Guillory was pronounced fit for duty and
referred to the City of Houston, Health and Human Services Department (HHS), for
treatment. After receiving treatment at HHS, Guillory returned to Methodist for
rescreening. Despite an elevated white blood cell count and other abnormalities, Dr.
Khan pronounced Guillory fit for duty, and Guillory embarked aboard the ship M/V
Patriot (Patriot) for oceangoing sea duty as an employee of Marine.
          While aboard Patriot, Guillory began experiencing severe pain, was evacuated,
and subsequently was diagnosed with a massive chronic bacterial infection of the
kidneys. Guillory eventually died as a result of the infection. Because Guillory’s
illness manifested itself while onboard Patriot, Marine was responsible for the costs
of Guillory’s medical care under the maritime doctrine of maintenance and cure. 
          In its first amended petition, Marine sought damages resulting from
Methodist’s and Dr. Khan’s alleged negligence in improperly pronouncing that
Guillory was fit for duty from Methodist, Dr. Khan, and others or, alternatively,
contribution for the sums expended by Marine pursuant to the doctrine of
maintenance and cure. Methodist and Dr. Khan filed motions to dismiss Marine’s
action because its underlying claims were health care liability claims and Marine did
not file an expert report within 180 days of filing suit, as required by former article
4590i. After Methodist filed its motion to dismiss, Marine filed a notice of filing
expert reports pursuant to former article 4590i and motion to extend time to file the
reports. The trial court denied Marine’s motion to extend time to file reports and
granted the motions to dismiss.
Applicability of Former Article 4590i
          In its first issue, Marine contends that because Guillory was injured while at
sea, (1) maritime law applies to this case, (2) federal law for indemnity and
contribution applies in lieu of state law and former article 4590i is thus inapplicable
to this case, and (3) even if state law applies to this case, former article 4590i is
inapplicable because Methodist and Dr. Khan “did not treat the decedent, no
physician-patient relationship existed between them, and [Marine’s] claim arises
under the federal maritime law and not out of any treatment by [Methodist and Dr.
Khan].” Methodist and Dr. Khan contend that Marine’s “claims arise from shore-based treatment and are state-law-governed claims.”
A.      Applicability of State or Federal Law for Indemnity and Contribution
          Methodist and Dr. Khan contend that because Guillory was examined ashore
at Methodist Hospital, the alleged tort occurred ashore, and thus Marine’s claims are
governed by state law. Marine contends that the tort was maritime because it resulted
from land-based negligence that caused damage to be suffered at sea, and thus
Marine’s claims are governed by federal maritime law.
          To invoke federal admiralty jurisdiction over a tort claim, conditions of
location and connection with maritime activity must be satisfied. Jerome B. Grubart,
Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534; 115 S. Ct. 1043, 1048
(1995). In this case, we must first determine whether the tort occurred on navigable
water. Id. “[A] tort occurs where the impact of the act or omission produces injury.” 
Hails v. Atl. Richfield Co., 595 F. Supp. 948, 950 (W.D. La. 1984) (citing Exec. Jet
Aviation, Inc., 409 U.S. 249, 266, 93 S. Ct. 493, 503 (1972)) (emphasis in original);
see also Taylor v. Kennedy Engine, Inc., 861 F.2d 127, 128–29 (5th Cir. 1988)
(holding that party may satisfy locality test when negligence occurred on land if
injury occurred on navigable waters). “Thus, where a force giving rise to an injury
on the waters originates on land, the tort is maritime.” Hails, 595 F. Supp. at 950. 
The fact that Guillory’s injury might have been caused by land-based medical
negligence does not, therefore, change the maritime nature of Marine’s claim. Id. 
Although Guillory was declared fit for sea duty when he was on land, we conclude
that the impact of this declaration produced injury on navigable water, i.e., Guillory
fell ill while at sea, was unable to complete his duties, and his illness caused Marine
to incur the expenses of Guillory’s medical treatment.
          Whether a tort occurred on navigable waters, however, does not end our
inquiry. We must further determine “whether the tort has ‘a potentially disruptive
impact on maritime commerce’” and “whether ‘the general character’ of the ‘activity
giving rise to the incident’ shows a ‘substantial relationship to the traditional
maritime activity.’” Grubart, 513 U.S. at 534; 115 S. Ct. at 1048 (citing Sisson v.
Ruby, 497 U.S. 358, 364–65 & n.2, 110 S. Ct. 2892, 2896–97 & n.2 (1990)). To do
so, we must “‘assess the general features of the type of incident involved.’” Id.
(quoting Sisson, 497 U.S. at 363, 110 S. Ct. at 2896). The relevant activity “is
defined not by the particular circumstances of the incident, but by the general conduct
from which the incident arose.” Sisson, 497 U.S. at 364, 110 S. Ct. 2897. This test
focuses on the “comparison of traditional maritime activity to the arguably maritime
character of the tortfeasor’s activity in a given case.” Grubart, 513 U.S. at 542; 115
S. Ct. at 1052; see also Seven Seas Fish Mkt, Inc. v. Koch Gathering Sys., Inc., 36
S.W.3d 683, 687 (Tex. App.—Corpus Christi 2001, pet. denied) (holding that
transportation of oil across land and non-navigable waters in pipeline that ruptured
and caused oil to spill into navigable waters did not “bear a substantial relationship
to traditional maritime activity”).
          The Fifth Circuit has held that “[a] ship is unseaworthy unless it and all of its
appurtenances and crew are reasonably fit and safe for their intended purpose.” Miles
v. Melrose, 882 F.2d 976, 981 (5th Cir. 1989). “Just as a dangerous mast, a defective
line, or a damaged hull may render a vessel unseaworthy, so may a seaman who is not
reasonably fit.” Id. In Miles, a seaman’s union referred a seaman to a ship for service
despite its knowledge that the seaman was dangerous, and the seaman subsequently
attacked and murdered another seaman. Id. at 981, 992. The Fifth Circuit held that
the union’s tort was significantly related to maritime activity because “[t]he injury
occurred to a seaman on a vessel at sea” and “[t]he functions and roles of all the
parties [were] inextricably tied to the maritime industry.” Id. at 991. Additionally,
because the plaintiff’s claim that the vessel was unseaworthy was unique to maritime
law, the tort was within admiralty jurisdiction. Id.
          In this case, Marine alleges that Methodist and Dr. Khan negligently declared
an unfit seaman as fit for duty, thus causing Marine to incur expenses for the
seaman’s maintenance and cure, a purely maritime law claim.


 As set forth above,
Guillory’s injury manifested itself while he was at sea, when he fell ill. Further, the
functions and roles of the parties are “inextricably tied to the maritime industry”:
Guillory was a seaman employed on a vessel; Marine is the vessel owner; and
Methodist and Dr. Khan were medical health care professionals hired pursuant to a
contract with the seaman’s union, SIU, to certify seamen as fit for duty on seagoing
vessels. See id. We conclude that certifying an unfit seaman as fit for duty, who is
employed by a shipowner as a result of that certification, may render a vessel
unseaworthy, and thus certification of an unfit seaman has a potentially disruptive
impact on maritime commerce. See id.; see also Grubart, 513 U.S. at 534; 115 S. Ct.
at 1048 (citing Sisson, 497 U.S. at 364–65 & n.2, 110 S. Ct. at 2896–97 & n.2). We
further conclude that the general character of certifying seamen for duty substantially
relates to a traditional maritime activity. See Grubart, 513 U.S. at 534; 115 S. Ct. at
1048 (citing Sisson, 497 U.S. at 364–65 & n.2, 110 S. Ct. at 2896–97 & n.2). 
Therefore, Marine’s claims are governed by federal maritime law.
B.      4590i
          Marine contends that a claim for reimbursement for maintenance and cure is
a separate and distinct cause of action from the employee’s claim against the third-party tortfeasor and that as a result, federal law alone governs Marine’s claims,
despite any state law claims that Guillory’s estate or family may have against
Methodist and Dr. Khan for medical negligence. Marine further contends that “the
substantive and legal rights asserted in this action are governed by the maritime
doctrine of cure, federal case law governing comparative fault, contribution and
indemnity, and the Jones Act.” Methodist and Dr. Khan contend that “admiralty law
supplants state law only if there is a direct conflict between the two” and that because
“both health care and medical negligence are defined and interpreted under state law,”
former article 4590i governs Marine’s claims.
          We first consider whether, as Marine contends, its claims are governed by the
Jones Act, which provides a cause of action for maritime workers injured by an
employer’s negligence. See 46 U.S.C.S. § 688 (1987); Offshore Pipelines, Inc. v.
Schooley, 984 S.W.2d 654, 657 (Tex. App.—Houston [1st Dist.] 1998, no pet.). The
Jones Act applies to employees seeking damages from their maritime employers, not
to maritime employers seeking damages from third-party tortfeasors. See 46 U.S.C.S.
§ 688. We conclude that because Marine, as Guillory’s employer, is bringing a claim
against Methodist and Dr. Khan, as third-party tortfeasors, the Jones Act does not
apply in this case.
          We next consider whether maintenance and cure and federal case law
governing comparative fault, contribution and indemnity apply to this case. 
“Maintenance and cure entitles a seaman who is injured or becomes ill while in the
service of a ship to food, lodging, and necessary medical services.”


 Maritime
Overseas Corp. v. Waiters, 917 S.W.2d 17, 18 (Tex. 1996). The shipowner is liable
to the seaman for maintenance and cure regardless of whether the shipowner was at
fault or the ship unseaworthy. Id. A shipowner required to pay maintenance and cure
may recover, through indemnity or contribution, those expenses from a third party
who caused the seaman’s injury in whole or in part. Liberty Seafood, Inc. v. Herndon
Marine Prods., Inc., 38 F.3d 755, 757 (5th Cir. 1994). We thus conclude that federal
law governing maintenance and cure and contribution and indemnity does apply in
this case.
          Federal law provides that a party asserting an admiralty action may bring the
action in state court. See 28 U.S.C.S. § 1333(1) (20060); Offshore Pipelines, 984
S.W.2d at 657. When a state court hears an admiralty case, that court occupies
essentially the same position occupied by a federal court sitting in diversity: the state
court must apply substantive federal maritime law but follow state procedure. 
Offshore Pipelines, 984 S.W.2d at 657 (citing Texaco Ref. & Mkt, Inc. v. Estate of
Dau Van Tran, 808 S.W.2d 61, 64 (Tex. 1991)). 
          State law may supplement federal maritime policies, unless a state law
“deprive[s] a person of any substantial admiralty rights as defined in controlling acts
of Congress or by interpretive decisions of [the United States Supreme] Court.” Pope
& Talbot, Inc. v. Hawn, 346 U.S. 406, 409–10; 74 S. Ct. 202, 205 (1953); Stier v.
Reading & Bates Corp., 992 S.W.2d 423, 430 (Tex. 1999). “The exercise of
admiralty jurisdiction, however, ‘does not result in automatic displacement of state
law.’” Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 206, 116 S. Ct. 619, 623
(1996). Specifically, when Congress has not prescribed, and federal maritime law
does not set forth, a remedy for a specific cause of action in a maritime case, state
statutes may apply to supplement federal maritime law. See Yamaha, 516 U.S. at
215–16, 116 S. Ct. at 628 (holding damages for wrongful death claim properly
governed by state law because Congress had not prescribed remedies for wrongful
deaths of nonseafarers in navigable waters); Pope & Talbot, 346 U.S. at 409–10; 74
S. Ct. at 205.
          As set forth above, to recover damages for maintenance and cure from a third-party tortfeasor, the shipowner must show that the third party caused injury to the
seaman. Liberty Seafood, 38 F.3d at 757. To do so in this case, Marine must thus
prove that Methodist and Dr. Khan caused Guillory’s injury. Marine’s first amended
petition, the live pleading in this case, asserts that Methodist and Dr. Khan violated
duties of care owed to Guillory “by failing to exercise ordinary care and diligence
exercised by other physicians and health care providers in the same or similar
circumstances and were negligent specifically in permitting Guillory to work aboard
an oceangoing vessel in a medically remote environment while suffering from a
massive and chronic kidney infection.” Marine further alleged in its petition that
Methodist and Dr. Khan
were negligent jointly and severally in one or more of the following
nonexclusive particulars which are pled in the alternative:
 
a.Failure to properly compile and assess a medical history
pertaining to Guillory so as to properly ascertain an appropriate
treatment protocol; 
 
b.Failure to properly treat Guillory’s infections; 
 
c.Failure to properly re-screen [sic] and further and properly assess
Guillory’s fitness for duty at sea and in a medically remote
environment; 
 
          d.       Failure to adequately assess Guillory’s job description and work
demands before authorizing his attendance to that work
environment. [sic]
 
e.Failure to deny fit for duty status to Guillory when he was
medically unfit for sea duty.

We conclude that because Marine must show that Methodist and Dr. Khan caused
Guillory’s injury, Marine must prove up the underlying health care liability claim to
recover damages for maintenance and cure through indemnity or contribution. 
Because the underlying health care liability claim is not governed by federal maritime
law or statute, we further conclude that former article 4590i governs to supplement
the federal maritime law.
          Marine contends that former article 4590i is inapplicable to this case because
Methodist and Dr. Khan did not “treat” Guillory and “no physician-patient
relationship existed between them.” We first address whether a physician-patient
relationship was established between Guillory and Dr. Khan as a “plan” doctor under
the Agreement, thus establishing that Dr. Khan owed Guillory a duty of reasonable
care when he examined Guillory to determine his fitness for duty. We next address
whether this dispute involves the appropriate standard of care owed to Guillory, thus
bringing this claim within former article 4590i.
          Marine correctly asserts that former article 4590i applies only when a
contractual physician-patient relationship exists between the parties. Almaguer v.
Jenkins, 9 S.W.3d 835, 838 (Tex. App.—San Antonio 1999, no pet.); Wilson v.
Winsett, 828 S.W.2d 231, 232 (Tex. App.—Amarillo 1992, writ denied). Texas
courts have recognized the existence of a duty only when the physician was party to
a contract for the benefit of the patient or had taken an active step in treating the
patient. Wax v. Johnson, 42 S.W.3d 168, 172 (Tex. App.—Houston [1st Dist.] 2001,
pet. denied) (emphasis added). A third party may contract with a physician for a
patient’s benefit; thus, when “healthcare services are rendered on behalf of the patient
and are done for the patient’s benefit, a consensual physician-patient relationship
exists for the purpose of medical malpractice.” Dougherty v. Gifford, 826 S.W.2d
668, 675 (Tex. App.—Texarkana 1992, no writ). Specifically, when a physician has
an agreement with a patient’s health care plan to provide medical care to the plan’s
patients, a physician-patient relationship exists between the physician and the patient. 
Hand v. Tavera, M.D., 864 S.W.2d 678, 679 (Tex. App.—San Antonio 1993, no
writ).
          Here, the Agreement was entered between the Seafarers Welfare Plan, on
behalf of SIU employees, and Methodist. Methodist subsequently contracted with Dr.
Khan to provide medical care to the patients covered by the Agreement. The
Agreement provides, as follows:
This Health Facility Provider Agreement . . . is entered into
between the Seafarers Welfare Plan (hereinafter Payor) and . . .
[Methodist] (hereinafter Provider).
 
In consideration of the mutual promises, covenants and the
respective representations of the parties noted below, [Methodist] and
the Seafarers Welfare Plan as purchaser of such services on behalf of
[SIU’s] covered employees, their dependents and retirees, (eligible
individuals), agree to the following:
 
SECTION 1: Description of Parties
 
1.01Payor is a multi-employer trust fund . . . . Payor maintains
for the benefit of its covered employees, their dependents and retirees a
self-insured health care plan which is an “employee welfare benefit
plan” as that term is defined by the Employment Retirement Income
Security Act of 1974.

(Emphasis added).
          As set forth above, a contract for health care services clearly existed between
Methodist and Guillory, as an employee covered by SIU, which, by the express terms
of the Agreement was entered on behalf of and for the benefit of Guillory. We thus
conclude that a physician-patient relationship existed between Dr. Khan and Guillory
because Dr. Khan had an agreement with Methodist, a party to the Agreement, to
provide health care services on behalf of employees covered under the Agreement. 
See Wax, 42 S.W.3d at 172; Hand, 864 S.W.2d at 679.
          Former article 4590i governs health care liability claims filed in Texas before
September 2003. See Tex. Civ. Prac. & Rem. Code Ann. ch. 74 (Vernon 2005 &
Supp. 2005). “To determine whether a cause of action is a health care liability claim
that falls under the rubric of [former article 4590i], we examine the underlying nature
of the claim and are not bound by the form of the pleading.” Diversicare Gen.
Partner, Inc. v. Rubio, No. 02-0849, 2005 WL 2585490, at *3 (Tex. 2005). Former
article 4590i defined a health care liability claim as
a cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care or health care or safety which proximately
results in injury to or death of the patient, whether the patient’s claim or
cause of action sounds in tort or contract.

Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(a)(4) (current version at Tex. Civ.
Prac. & Rem. Code Ann. § 74.001(a)(13) (Vernon 2005)) (emphasis added). 
“Health care” is “any act or treatment performed or furnished, by any health care
provider for, to, or on behalf of a patient during the patient’s medical care, treatment,
or confinement.” Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(a)(2) (current version
at Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10) (Vernon 2005)). “Medical
care” is “any act defined as practicing medicine . . . performed or furnished, or which
should have been performed, by one licensed to practice medicine in Texas for, to,
or on behalf of a patient during the patient’s medical care, treatment, or confinement.” 
Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(a)(6) (current version at Tex. Civ.
Prac. & Rem. Code Ann. § 74.001(a)(19) (Vernon 2005)). 
          A hospital is a health care provider. Tex. Rev. Civ. Stat. Ann. art. 4590i,
§ 1.03(a)(3) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(12)
(Vernon 2005)). Former article 4590i thus applies to Methodist as a health care
provider and to Dr. Khan as a physician if the asserted causes of action are based on
claimed departures from an accepted standard of medical care, health care, or safety
of the patient. Diversicare, No. 02-0849, 2005 WL 2585490, at *3. “A cause of
action alleges a departure from accepted standards of medical care or health care if
the act or omission complained of is an inseparable part of the rendition of medical
services.” Id. 
          Marine expressly alleged in its first amended petition that Methodist and Dr.
Khan “fail[ed] to exercise ordinary care and diligence exercised by other physicians
and health care providers in the same or similar circumstances.” Marine further
alleged five grounds of negligence that directly related to health care and medical
care, i.e., an “act . . . performed or furnished, by [Methodist and Dr. Khan] . . . on
behalf of [Guillory] during [his] medical care.” See Tex. Rev. Civ. Stat. Ann. art.
4590i, § 1.03(a)(2), (6) (current version at Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001(a)(10), (19) (Vernon 2005)). Specifically, those grounds of negligence each
alleged a failure of Methodist and Dr. Khan to provide proper health care and medical
care to Guillory. As set forth above, Marine could recover the expenses of
maintenance and cure from a third-party tortfeasor; thus, Marine had standing to bring
Guillory’s former article 4590i claim to recover the expenses of maintenance and cure
for Guillory’s injury, allegedly caused in whole or in part by Methodist and Dr. Khan. 
See Liberty Seafood, 38 F.3d at 757.
          Because this dispute concerns the appropriate standard of care owed to
Guillory regarding whether he should have been certified as fit for duty and sent out
on an oceangoing vessel, Marine’s claims are based on claimed departures from an
accepted standard of medical care, health care, or safety of the patient. Although
Marine contends that its “claims do not assert causes of action claiming that
[Methodist and Dr. Khan] departed from accepted standards of health or medical
care,” Dr. Khan not only examined Guillory on behalf of Marine but also on behalf
of Guillory himself. Guillory suffered personally the effects of his sickness; thus, a
proper certification regarding fitness for duty was for his benefit as well as Marine’s. 
Further, as set forth above, the Agreement, which established a physician-patient
relationship among the parties, was entered on behalf of Guillory as an employee
covered by the Agreement. Thus, the health care services provided by Methodist and
Dr. Khan were for Guillory’s benefit. We conclude that Methodist and Dr. Khan had
a duty to provide Guillory with the appropriate standard of care in conducting his
examination. 
          Although we are not bound by the language of the pleading, Diversicare, No.
02-0849, 2005 WL 2585490, at *3, we need look no further than Marine’s first
amended petition in this case to determine the underlying nature of the claim, because
Marine expressly alleged a departure from accepted standards of medical and health
care: “failing to exercise ordinary care and diligence exercised by other physicians
and health care providers in the same or similar circumstances.” Furthermore, Marine
may not recast claims that affect a professional standard of care to avoid the
procedural requirements of former article 4590i. See Murphy v. Russell, 167 S.W.3d
835, 838–39 (Tex. 2005) (holding that statute requires that claims that might involve
a health care standard of care will be subject to 4590i). Thus, “we are not bound by
[Marine’s] characterization of the claims” as nonhealthcare liability claims. Hector
v. Christus Health Gulf Coast, 175 S.W.3d 832, 835 (Tex. App.—Houston [14th
Dist.] 2005, pet. denied).



          Because this dispute concerns the appropriate standard of care that Methodist
and Dr. Khan owed to Guillory, the act or omission complained of, i.e., certification
as fit for duty, is an inseparable part of the rendition of medical services. 
Accordingly, we hold that the trial court did not err in treating Marine’s underlying
claims as health care liability claims and in applying the expert report filing
requirements of former article 4590i in this case.
          We overrule Marine’s first issue.
Motion to Extend Time to File Expert Reports
          In its second issue, Marine contends that the trial court abused its discretion by
not granting a 30-day extension from the date it filed its motion for an extension of
time to file its expert report required by section 13.01(d) of former article 4590i. 
Specifically, Marine contends that the trial court should have granted a 30-day
extension of time to file its report under section 13.019(g).


 
          On review of a dismissal of a medical malpractice claim with prejudice for
noncompliance with the expert-report filing provision of section 13.01(d) of former
article 4590i, the dispositive question is whether the trial court abused the discretion
vested in it by the Legislature pursuant to former article 4590i, section 13.01(e). See
Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003); Am. Transitional Care Ctrs. v.
Palacios, 46 S.W.3d 873, 877 (Tex. 2001); Williams v. Chisolm, 111 S.W.3d 811,
814 (Tex. App.—Houston [1st Dist.] 2003, no pet.); Strom v. Mem’l Hermann Hosp.
Sys., 110 S.W.3d 216, 220 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). The
same standard governs review of rulings that deny the 30-day grace period under
section 13.01(g) of former article 4590i. Walker, 111 S.W.3d at 62; Williams, 111
S.W.3d at 814. 
          An abuse of discretion occurs when a trial court acts arbitrarily or unreasonably
and without reference to any guiding rules or principles. See Walker, 111 S.W.3d at
62; Williams, 111 S.W.3d at 814. The abuse-of-discretion standard has different
applications in different circumstances. See Walker v. Packer, 827 S.W.2d 833, 839
(Tex. 1992). Because a trial court has no discretion in determining what the law is,
which law governs, or how to apply the law, we review these types of discretionary
rulings de novo. See id. at 840; Williams, 111 S.W.3d at 814–15. In contrast, when
we review a trial court’s resolution of factual matters that underlie its discretionary
rulings, we must defer to its factual resolutions, as well as any credibility
determinations that possibly affected those resolutions, and may not substitute our
judgment for its judgment. See Walker, 111 S.W.3d at 62; Packer, 827 S.W.2d at
839; Williams, 111 S.W.3d at 815. 
          Former section 13.01(d)(1)–(2) required a medical-malpractice claimant to
“furnish to counsel for each physician or health care provider one or more expert
reports, with a curriculum vitae of each expert listed in the report” no later than the
later of 180 days after filing of a health-care liability claim or the last day of any
extended period under subsection (f) or (h) of section 13.01. See Tex. Rev. Civ.
Stat. Ann. art. 4590i, § 13.01(d)(1)–(2), (f), (h) (current version at Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(a), (c) (Vernon Supp. 2005)). 
          In this case, it is undisputed that Marine’s 180-day deadline to file an expert
report expired on January 13, 2003. It is further undisputed that Marine waited until
April 13, 2004, to file its motion to extend the expert report deadline.



          Section 13.01(g), which allowed a grace period for filing the expert reports
required by section 13.01(d), states as follows:
Notwithstanding any other provision of this section, if a claimant has
failed to comply with a deadline established by Subsection (d) of this
section and after hearing the court finds that the failure of the claimant
or the claimant’s attorney was not intentional or the result of conscious
indifference but was the result of an accident or mistake, the court shall
grant the grace period of 30 days to permit the claimant to comply with
that subsection. A motion by a claimant for relief under this subsection
shall be considered timely if it is filed before any hearing on a motion
by a defendant under Subsection (e) of this section.

Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g) (repealed 2003). A party who does
not file an expert report has “failed to comply with a deadline established by
[s]ubsection (d).” Walker, 111 S.W.3d at 61; Williams, 111 S.W.3d at 814. 
          Section 13.01(g) thus required that the trial court grant the claimant a 30-day
grace period to comply with section 13.01(d) if the failure to file the required expert
report was “not intentional or the result of conscious indifference but was the result
of an accident or mistake.” See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g)
(repealed 2003). The “accident or mistake” standard for the granting of a section
13.01(g) grace period mirrors the standard that also controls setting aside a default
judgment or reinstating a case dismissed for want of prosecution. Walker, 111
S.W.3d at 63; Williams, 111 S.W.3d at 815. 
          In assessing whether failure to file a report was “due not to intentional
disregard or conscious indifference but to accident or mistake,” we examine the
knowledge and acts of the claimant or the attorney. Walker, 111 S.W.3d at 64;
Williams, 111 S.W.3d at 815. “If the factual assertions in the claimant’s testimony
are not controverted by the opposing party, the claimant satisfies his or her burden if
the testimony sets forth facts that, if true, negate intentional or consciously indifferent
conduct by the claimant,” and the claimant is entitled to the 30-day grace period
prescribed by 13.01(g). Walker, 111 S.W.3d at 64; Williams, 111 S.W.3d at 815–16. 
To determine whether the claimant’s factual assertions are controverted, we look to
the entire record. Walker, 111 S.W.3d at 64. “Unless the defendant specifically
controverts the plaintiff’s evidence supporting mistake, the plaintiff will prevail on
that issue.” Landry v. Ringer, 44 S.W.3d 271, 275 (Tex. App.—Houston [14th Dist.]
2001, no pet.). “Some excuse, but not necessarily a good excuse, is enough to warrant an
extension of time to file the expert report, so long as the act or omission causing the
failure to file the report was, in fact, accidental.” Pfeiffer, 29 S.W.3d at 198 (quoting 
Nguyen v. Kim, 3 S.W.3d 146, 152 (Tex. App.—Houston [14th Dist.] 1999, no pet.)
(citing Horsley-Layman v. Angeles, 968 S.W.2d 533, 536 (Tex. App.—Texarkana
1998, no pet.)) (emphasis in original). An accident or mistake is generally
characterized by “inadequate knowledge of the facts or an unexpected happening that
precludes compliance.” Pfeiffer, 29 S.W.3d at 198. 
          “Texas courts have struggled to define the parameters of ‘accident or mistake’
in the context of section 13.01(g), with somewhat varying results.” Tesch v. Stroud,
28 S.W.3d 782, 788 (Tex. App.—Corpus Christi 2000, pet. denied). A claimant
whose attorney mistakenly believed a paralegal had timely sent the expert report and
who immediately furnished the report upon receiving the defendant’s motion to
dismiss, was entitled to a new trial after his case was dismissed. McClure v. Landis,
959 S.W.2d 679, 681–82 (Tex. App.—Austin 1997, pet. denied). Likewise, a
plaintiff who believed that section 13.01(d) was satisfied by the provision of a report
about another defendant was entitled to an extension to file a proper report. 
Horsley-Layman, 968 S.W.2d at 536–37. Further, “calendaring errors have been held
to establish accident or mistake.” Pfeiffer, 29 S.W.3d at 198; see also Nguyen, 3
S.W.3d at 152; Ferrell v. Ferrell, 820 S.W.2d 49, 50 (Tex. App.—Corpus Christi
1991, writ denied); Kirk v. Farmer’s Aerial Spraying Serv., Inc., 496 S.W.2d 739,
741–42 (Tex. Civ. App.—Amarillo 1973, no writ); Republic Bankers Life Ins. Co. v.
Dixon, 469 S.W.2d 646, 647–48 (Tex. Civ. App.—Tyler 1971, no writ); Newsom v.
Boyd, 203 S.W.2d 874, 877 (Tex. Civ. App.—Galveston 1947, no writ). Mere
negligence, such as not reading the statute, is not an intentional act or conscious
indifference. Roberts v. Med. City Dallas Hosp., 988 S.W.2d 398, 403 (Tex.
App.—Texarkana 1999, pet. denied). In addition, the supreme court held in a default
judgment case that when uncontroverted affidavits showed that an original petition
was misplaced in the defendant’s office, the defendant’s failure to answer suit did not
constitute an intentional act or conscious indifference, but rather was the result of
accident or mistake. Strackbein v. Prewitt, 671 S.W.2d 37, 39 (Tex. 1984); see also
State Farm Life Ins. Co. v. Mosharaf, 794 S.W.2d 578, 584 (Tex. App.—Houston [1st
Dist.] 1990, writ denied) (holding that misplacement of original petition and
subsequent failure to answer suit was result of accident or mistake and not of
conscious indifference). 
          By contrast, “conscious indifference means ‘failing to take some action which
would seem indicated to a person of reasonable sensibilities under similar
circumstances.’” Pfeiffer, 29 S.W.3d at 198. A trial court thus did not abuse its
discretion by dismissing a case in which the plaintiff’s attorney’s only excuses for
failing to meet the deadline were that the plaintiff had missed several appointments
and the expert did not return her phone calls. Estrello v. Elboar, 965 S.W.2d 754,
754–58 (Tex. App.—Fort Worth 1998, no pet.). A trial court further did not abuse
its discretion by dismissing a suit in which the attorney’s reasons for not timely filing
the expert report included the late date the case was referred to him, the large amount
of work demanded by the case and others he was handling, and his assumption that
opposing counsel would not enforce the statutory deadline. Broom v. MacMaster,
992 S.W.2d 659, 664 (Tex. App.—Dallas 1999, no pet.). A trial court also did not
abuse its discretion by dismissing a case for failure to file an expert report timely
when the facts refuted the claimants’ assertion that they were unaware of the 180-day
deadline for filing the report. Nguyen, 3 S.W.3d at 153–54.
          In support of its motion for an extension of time, Marine produced an affidavit
of its attorney, Jerry R. McKenney. The affidavit states the following:
I am the attorney responsible for litigation of the above-styled
case. During the initiation of litigation in this matter, I undertook an
analysis of the various claims available to [Marine]. Part of this analysis
included reviewing the reports of Fred Pasternak, M.D. which set out his
review of the medical facts and his opinion that the pre-employment
screening and follow up procedures in Richard Guillory’s case were
carried out in a manner that departed from the applicable standard of
care. In drafting the notice of claim letters and the pleadings on behalf
of [Marine], I was guided by Dr. Pasternak’s analysis and intended to
use his reports to fulfill the requirements of [former article 4590i] with
regard to production of an expert report that demonstrated the viability
of the claims being asserted against the various defendants.
 
As the initial litigation proceeded, due to my own error, I did not
file the reports within the time prescribed by the statute. The simple
reason for this is that I inadvertently thought that I had produced them
during the time that I was processing the initial disclosures, requests for
disclosures and other discovery. This was a mistake or accident on my
part. At no time did I intentionally decline to file the reports in the face
of the requirement to do so nor did I simply ignore the requirement to do
so; which would have made no sense with the reports already prepared. 
Rather, I mistakenly thought that I had done so and did not realize this
error until I received a service copy of The Methodist Hospital’s motion
to dismiss. Shortly thereafter I filed the reports with a motion for
extension of time to file them as provided for in . . . 13.01(g).

Along with its motion, Marine also produced copies of the reports purportedly
intended to be filed within the 180-day period. The reports are dated January 1, 2001,
and May 22, 2001, well before the filing deadline of January 13, 2003. Further,
McKenney presented the following testimony at the hearing on the motions to
dismiss: 
Part of my evaluation of the case was the review of reports that
had been obtained from a Dr. Fred Pasternak analyzing this—the case
and the liability issues before the case was filed. My intention at that
point was to use those reports and file them early on in the case to
satisfy the statutory requirements of Article 4590i for the expert reports
to the extent that that applied to any of the defendants in this case, which
again at that point was somewhat unclear.
 
In any case, as the case developed and as I worked on the case, I
inadvertently did not file those reports. I thought that I had. I just
simply got confused with what I was doing and didn’t do that. That was
my mistake. This was not a situation where I told somebody to do it and
they didn’t do it. I’m not going to stand here and blame it on a secretary
or anybody else. It was purely my fault.
 
On the other hand, this is not a situation where I knew that they
hadn’t been filed and thought that there was some reason not to or that
there was some other insidious basis here. Basically, it was just a screw-up on my part. It’s entirely my responsibility. And it was an error.

          Thus, McKenney presented specific evidence at the hearing that, but for his
mistake, he would have filed the expert reports on time “to satisfy the statutory
requirements of Article 4590i” and that he thought he had filed the expert reports
timely. The record shows that Methodist and Dr. Khan did not specifically controvert
Marine’s evidence supporting mistake. See Landry, 44 S.W.3d at 275. Further,
although McKenney testified at the hearing on the motions to dismiss, neither
Methodist’s nor Dr. Khan’s attorney asked McKenney any questions at the hearing
nor tried to present any evidence to controvert McKenney’s testimony. In light of the
uncontroverted evidence presented in McKenney’s affidavit and testimony, we
conclude that Marine’s failure to file expert reports was due to an accident or mistake
and not intentional or resulting from conscious indifference. Although we
acknowledge that Marine does not have a “good excuse” for its failure to file the
reports on time, a good excuse is not required. Pfeiffer, 29 S.W.3d at 198. As set
forth above, some excuse will suffice. Id. We hold that Marine’s proof may indeed
have shown negligence on the part of its attorney, but Marine nonetheless met its
burden to prove that it did not timely file its expert reports due to accident or mistake
and proved that its failure to file the reports was unintentional and not the result of
conscious indifference. See State Farm, 794 S.W.2d at 584; Strackbein, 671 S.W.2d
at 39.
          We further conclude that this case is distinguishable from Kidd v. Brenham
State School Texas Department of Mental Health and Mental Retardation, cited by
Methodist and Dr. Khan as dispositive. 93 S.W.3d 204 (Tex. App.—Houston [14th
Dist.] 2002, pet. denied). In that case, the Fourteenth Court of Appeals held that the
trial court did not abuse its discretion in refusing to grant an extension of time
because the attorney’s testimony that “the ball was dropped in my office” was
insufficient to show accident or mistake when the attorney could not remember what
actually happened and whether he had miscalculated the date that the reports were
due. Id. at 207–08. In this case, by contrast, McKenney gave a specific reason why
he had not timely filed the reports, which was because he thought that he had already
done so. 
          Because the uncontroverted evidence shows that McKinney did not file the
reports due to accident or mistake, we hold that the trial court abused its discretion
by not granting Marine’s motion for the 30-day extension of time prescribed in
section 13.01(g) of former article 4590i.
          We sustain Marine’s second issue.
 

Conclusion
          We reverse the orders of dismissal signed by the trial court on June 22, 2004,
and remand this case to the trial court for further proceedings consistent with this
opinion.
 
                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Alcala.